THE STATE OF TEXAS V. MARTIN BROTHERS.

No. 7846. Decided February 25, 1942.
Rehearing overruled March 25, 1942.
(160 S. W., 2d Series, 58.)

*Gerald C. Mann,* Attorney General, *Geo. W. Barcus, Pat Coon,* and *Richard H. Cocke,* Assistants Attorney General, for plaintiff in error.

Under the terms of the contract the State engineer was the final arbiter with respect to all disputes relating to the construction work of the contract, and when he had determined the number of yards of earth to be excavated the plaintiffs were estopped to claim the extra compensation sued for. 7 Tex. Jur., 554; 9 Am. Jur. sec. 21; Pierce Oil Co. v. Phoenix Refining Co., 259 U. S. 125.

*Harris & Harris,* of Austin, for defendants in error.

The Court of Civil Appeals correctly held that it was not within the province of the highway engineer to require other and additional work to be performed in the grading and construction of the highway and to arbitrarily rule that no additional compensation should be allowed therefor. City of Galveston v. Devlin, 84 Texas 319, 19 S. W. 395; McDaniel v. City of Beaumont, 92 S. W. (2d) 552, 560; Idem v. Johnson, 11 S. W. 1113.

MR. JUSTICE SHARP delivered the opinion of the Court.

This suit involves the construction of a contract between Martin Brothers and the State of Texas, for the improvement of fifteen miles of State highway in Liberty County. E. V. Martin and T. Q. Martin, composing the partnership of Martin Brothers, road contractors, after having obtained the permission of the Legislature, brought this suit for damages, alleging two grounds of recovery: (1) A claim for $3,090.64 for dirt removed, which the State refused to pay; and (2) a claim for $7,500.00, as additional compensation for extra work and expense in carrying out the contract, because of changes made by the State's engineer in the plans and specifications after the contract was executed. Trial was to a jury; but at the close of plaintiffs' evidence, upon the State's motion, a verdict was instructed against the plaintiffs on both counts. The Court of Civil Appeals, in reversing and remanding the case, held that, although the trial court correctly decided the law relating to plaintiffs' claim for dirt removed, it erred in instructing a verdict on that feature of the case concerning the subsequent alterations of the specifications by the highway engineer. 146 S. W. (2d) 782. This Court granted the application for writ of error of the State. No application was filed by Martin Brothers complaining of the adverse holding of the Court of Civil Appeals to their claim for dirt removed.

Plaintiffs allegations with reference to the two claims are in substance as follows:

The first ground of recovery, for the sum of $3,090.64, relates to the difference in the actual quantity of dirt removed by the contractors in complying with their contract, and the amount estimated by the Highway Engineer. The contract provided that plaintiffs would be entitled to receive a stated amount for each cubic yard of dirt removed. The Highway Engineer estimated that plaintiffs had removed 199,196 cubic yards, and the State made payment on that basis. Plaintiffs accepted the money. However, plaintiffs contend that they removed 225,416 cubic yards of dirt, but that their claim for additional compensation, submitted by them to the Highway Engineer, for the additional amount of dirt removed, was rejected. They then attempted to get a hearing before the Claims Committee; and being unsuccessful in this, they then brought suit on such claim.

The second ground of recovery, for the sum of $7,500.00, relates to extra expenses incurred by plaintiffs. Plaintiffs alleged that in the plans and specifications, furnished bidders to be used as a basis for their bids, the nature of the work to be done was shown in detail. The specifications included a map or drawing of the road, drawn to scale, which showed the approximate location of each tree. Of the many trees shown, only 26 were marked to be saved along the entire 15 miles of highway. Before they were awarded this contract, the plaintiffs, in a questionnaire required by the Highway Department, plainly stated that they intended to perform the work with heavy machinery. They testified that with the trees distantly spaced, as shown on the may or drawing included with the specifications, they could have used heavy machinery for digging the ditches, moving the dirt, and placing it on the roadbed, and would have done so; but because they were required by the Highway Engineer to leave so many more trees, they were unable to use the heavy machinery, and were forced to have the work done with machines drawn by mules. They testified that the manner in which they were forced to carry out the contract was far more expensive to them than the manner they had anticipated. They detailed their extra expenses, and prayed for a recovery therefor under the contract. Plaintiffs admitted that they received and accepted approximately $42,000.00 under the contract; which is the amount the State considered to be due thereunder.

This suit is based upon the contract executed by the State and the contractors. There is no pleading that the State should be liable on quantum meruit for the value of the work done. It is not contended that any new or supplemental contract or agreement was entered into, or that the parties operated under a "Force Account." Nor was there any pleading that the State had waived any right, or is estopped to rely or insist on any provision of the contract. The suit was based squarely on the contract; and if plaintiffs are entitled to recover, it must be by virtue of the provisions of the contract itself.

The pertinent provisions of the contract read as follows:

"4.3. Changes and Alterations. *The Engineer will have the right to make such changes and alterations in the plans or in the quantities of the work, as may be considered necessary or desirable,* and such changes and alterations shall not be considered as a waiver of any condition of the contract, nor shall

they invalidate any of the provisions thereof. The Contractor shall perform the work as increased or decreased and no allowances will be made for anticipated profits. *When such changes and alterations increase or decrease the quantity of work to be done or of materials to be furnished under any item in excess of twenty (20%) per cent then either party to the contract, upon demand, shall be entitled to a revised consideration upon that portion of the work above or below twenty (20%) per cent of the quantity stated in the proposal; such revised consideration to be determined by special agreement or as is hereinafter provided under 'Extra Work'.*" (Italics ours.)

"4.4. Extra Work. Additional work *made necessary by changes and alterations of plans* or of quantities or for other reasons, *for which no prices are provided in the contract,* shall be defined as 'Extra Work' and shall be performed by the Contractor in accordance with these specifications and as directed; *provalid, however, that before any extra work is begun a 'Supplemental Agreement' shall be executed, or a written order issued by the Engineer to do the work on a 'Force Account' basis, as hereinafter provided.*" (Italics ours.)

"9.4. Payment for Extra Work. *Extra work ordered, performed and accepted will be paid for according to the terms of 'Supplemental Agreements' or on the 'Force Account' basis.* (Italics ours.)

"9.5. Force Account. When extra work is ordered to be performed on the 'Force Account' basis, payment for same will be made as follows:

"(a) For all labor, teams, trucks and foremen the Contractor will receive the current local rate of wage, to be agreed upon in writing before beginning such work, for each hour that said labor, teams, trucks and foreman are actually engaged in such work, to which shall be added an amount equal to fifteen (15%) per cent of the sum thereof as compensation. No charge will be made by the Contractor for organization or overhead expenses except actual cost of premiums on public liability and workmen's compensation insurance, and Contractor's bond. No charge for superintendence will be made unless considered necessary and ordered by the Engineer.

\*  \*  \*  \*  \*  \*  \*

"(c) For machine, power tools or other similar equipment, which may be considered necessary or desirable to use, the Engineer will allow the Contractor a reasonable rental price,

as agreed upon in writing before such work is begun, for each hour that said tools or equipment are in use on the work, which price will include the cost of fuel, lubricants, and repairs, without any additional compensation percentage being added.

"The compensation, as herein provided for, shall be received by the Contractor as payment in full for extra work done on the 'Force Account' basis, and will include use of small tools, overhead expense and profit. The Contractor's representative and the inspector shall compare records of extra work done on the 'Force Account' basis at the end of each day. Copies of these records will be made upon suitable forms provided for this purpose by the Department inspector and signed by both the inspector and the Contractor's representative, one copy being forwarded to the Engineer and one to the Contractor. All claims for Extra Work performed on the 'Force Account' basis shall be submitted to the Engineer by the Contractor upon certified statements to which shall be attached certified copies of invoices covering the cost of, and the freight charges on, all materials used in such work and such statements shall be filed not later than the tenth day of the month following that in which the work was actually performed."

It will be noted that under the above provisions of the contract the parties agreed that the engineer could make such changes in the plans and specifications as might be considered desirable. The agreement provides that if the change or alteration increases the quantity of work in excess of twenty per cent., then the plaintiffs would be entitled to a revised consideration, to be determined by special agreement or under the "Extra Work" provisions. It is admitted that no additional consideration would be due if the quantity of work was increased less than twenty per cent.

"Extra Work" is specifically defined as, *"Additional work made necessary by changes and alterations of plans for which no prices are provided in the contract."*

By the terms of this contract, under which plaintiffs claim and on which they rely, it is specifically provided that before they would be entitled to recover for "Extra Work" they must have had in advance a supplemental agreement in writing, or a written order of the engineer, complying with the provisions dealing with "Force Account." It is undisputed that they had neither.

The contract sued upon contains the following further provisions:

"5.1. Authority of Engineer. The work will be done under the supervision of the Engineer, to his satisfaction, and in accordance with the contract, plans and specifications. The Engineer will decide all questions which may arise as to the quality or acceptability of materials furnished and work performed; the the manner of the performance and rate of progress of the work; the interpretations of the plans and specifications; and as to the acceptable fulfillment of the contract on the part of the Contractor. His decisions will be final and he will have executive authority to enforce and make effective such decisions and orders as the Contractor fails to carry out promptly."

"5.2. Engineer as Referee. The Engineer will act as referee in all questions arising under the terms of the contract between the parties thereto and his decisions shall be final and binding."

In view of the extent of the work delegated to the Highway Department and the scope of its jurisdiction, and considering the many contracts entered into by it with contractors, it is quite obvious why the foregoing provisions are inserted in contracts such as the one under consideration.

Plaintiffs attack the validity of the foregoing provisions in this contract on the following grounds: that they are an attempt to deprive the judiciary of its power to settle questions between litigants; that they deprive plaintiffs of a jury trial on account of dirt they removed; and that plaintiffs are deprived of the right to appeal to a court of competent jurisdiction and to the appellate courts of the State.

Plaintiffs claim their rights under the contract executed by themselves with the Highway Department. The contract specifically provides, in addition to the other provisions set out in this opinion, that the Highway Engineer shall pass upon questions of dispute arising with reference to the enforcement of such contract.

■ The contract also provides that the decision of the Highway Engineer shall be final and conclusive. The Highway Engineer denied the claim of the plaintiffs. They cannot escape the binding effect of the decision of the Highway Engineer, without alleging and proving that his decisions in this case

was based upon partiality, fraud, misconduct, or gross error. No such attack was made upon the decision, either by pleadings or by proof, and, therefore, under the decisions of this Court plaintiffs are not entitled to recover herein. Austin Bridge Co. et al. v Teague, 137 Texas 119, 152 S. W. (2d) 1091; City of San Antonio v. McKenzie Construction Co., 136 Texas 315, 150 S. W. (2d) 989; 9 Amer. Jur., p. 26, sec. 36.

■ The Court of Civil Appeals erred in holding that an issue of fact was raised as to the right of plaintiffs to recover the sum of $7,500.00, claimed by them under their second ground. The parties having expressly agreed to the contract above mentioned, it is incumbent upon plaintiffs to show that they had a supplemental agreement with the Highway Department to cover such extra work, or to show by pleadings and proof that the Highway Department was estopped to deny their claim, in order to justify a recovery against the State. Neither showing was made by plaintiffs.

The judgment of the Court of Civil Appeals is reversed, and that of the trial court is in all things affirmed.

Opinion delivered February 25, 1942.

Rehearing overruled March 25, 1942.