**ESTEY CORPORATION et al., Appellants,**

**v.**

**ST. MARY'S UNIVERSITY OF SAN ANTONIO, INC., Appellee.**

No. 14989.

Court of Civil Appeals of Texas, San Antonio.

June 16, 1971.

Rehearing Denied July 14, 1971.

Second Motion for Rehearing Overruled Sept. 1, 1971.

Kampmann, Kampmann, Church & Burns, San Antonio, for appellants.

Patrick J. Kennedy, San Antonio, for appellee.

BARROW, Chief Justice.

Estey Corporation, a New York corporation, which does not have a certificate of authority to do business in Texas, and Continental Casualty Insurance Company, surety on Estey's performance-payment bond, have appealed from a judgment rendered after a non-jury trial in a suit brought on a contract entered into between Estey and St. Mary's University, whereby Estey agreed to furnish and install the library shelving in the new main library at St. Mary's University. A dispute arose regarding the wood-end panels for the steel shelving, and this part of the contract was never completed. The judgment of the trial court deleted the wood-end panels from the contract and reduced the contract price from $51,271.00 to $41,038.50.

The steel shelving was installed, and the sum of $36,439.56 was paid Estey by St. Mary's. Wood-end panels of birch veneer were tendered by Estey, but were rejected because they were not walnut veneer.[1] The parties were unable to reconcile their differences and suit was brought by Estey to recover the sum of $14,831.44, remaining unpaid on the contract price. A cross-

1. There is a secondary question regarding finishing of the panels, but it is not controlling.

action was subsequently filed by St. Mary's against Estey and its surety seeking cancellation and termination of said contract without further liability to St. Mary's, together with liquidated damages of $50.00 per day as provided in the contract for failure to timely complete the contract. In the alternative, St. Mary's sought specific performance, together with liquidated damages up to the sum of $14,831.44.

St. Mary's also filed a plea in abatement and motion to dismiss the suit brought by Estey, wherein it was alleged that Estey had no legal capacity to bring its suit since it was a foreign corporation and had never been issued a certificate of authority to do business in Texas. On May 1, 1970, the trial court entered an interlocutory judgment sustaining St. Mary's plea in abatement and dismissing the suit filed by Estey. The case in chief was subsequently tried on the merits with St. Mary's in the posture of plaintiff by reason of its cross-action against Estey and Continental Insurance Company. Estey's first point complains of the dismissal of its suit.

In the spring of 1967, St. Mary's, acting through its project architect, Brooks Martin, A.I.A., requested bids on the library shelving for the main library and law library, which were then under construction. Both Remington-Rand and Estey submitted bids. The bid of Remington-Rand was accepted for the law library, and Estey's bid of $51,271.00 was accepted for the main library. This bid called for numerous units of steel bookstacks to be furnished and installed. The steel shelving for the main library was fabricated by Estey in its New Jersey plant and installed without complaint by a sub-contractor. The proposal also called for wood-end panels which are the subject matter of this controversy. Estey did not fabricate such wood-end panels and based its bid, as did Remington-Rand, upon a proposal made by the Robert Shaw Manufacturing Company of Fort Worth, Texas, to furnish said wood-end panels.

Article 8.18, Subdivision A, Business Corporation Act, Vernon's Annotated Civil Statutes, provides in effect that any foreign corporation doing business in the State without a permit cannot maintain a cause of action growing out of such business in any of the courts of this State. Article 8.01, Subdivision B(9), supra, provides that the above prohibition does not apply to a foreign corporation "[t]ransacting any business in interstate commerce." In our opinion, the contract sued upon herein by Estey was an interstate transaction, and therefore, Article 8.18, Subdivision A, did not apply.

■ The contract clearly contemplated that Estey, a New York corporation, would furnish to St. Mary's, the steel bookcases manufactured by Estey, and the requirement that Estey would install same in the library building did not change the character of the sale from one in interstate commerce to one in intrastate commerce. York Manufacturing Co. v. Colley, 247 U.S. 21, 38 S.Ct. 430, 62 L.Ed. 963 (1918); American Soda Fountain Co. v. Hairston, 69 S.W.2d 546 (Tex.Civ.App.—El Paso 1934, no writ); J. B. Colt Co. v. McBurnett, 1 S.W.2d 385 (Tex.Civ.App.—San Antonio 1927, no writ). The interstate character of the contract between Estey and St. Mary's is not changed by the fact that the wood-end panels were actually secured by Estey from a materialman in Texas. Estey agreed with St. Mary's that Estey would provide said panels, and where Estey acquired same did not affect the nature of the contract between Estey and St. Mary's. The trial court erred in sustaining the plea in abatement and dismissing Estey's cause of action.

It is not contended that such error had any effect upon the trial of the case other than in the judgment to be rendered. Accordingly, we must consider Estey's other points of error. Under its points 2 and 3, Estey urges that the undisputed evidence established that it complied with the contract by manufacturing the wood-end panels in accordance with the specifica-

tions. Somewhat related are Estey's points 4 through 6 complaining of the court's failure to find that it had complied with the specifications. Points 7 through 10 relate to the authority of the project architect to reject the birch wood-end panels furnished by Estey. Estey's 11th point complains of the trial court's action in reforming the contract. By cross-points, St. Mary's also complains of the court's action in reforming the contract, and in holding that St. Mary's had waived its right to liquidated damages.

The dispute between the parties relates directly to whether the wood-end panels should be of walnut veneer with a walnut finish, as urged by St. Mary's, or that they could be of birch veneer with a walnut finish, as furnished by Estey. The specifications prepared by the architect, which were the basis of the bid, do not specify the species of wood in the veneer. The specifications provide in part: "Wood end panels shall be at least ¾" thick sliced veneer, *finished on all sides.* * * * Finish to be a walnut to match sample which will be submitted." Both Estey and Remington-Rand, who are in the library shelving business, understod such specifications to authorize any type of veneer, so long as it was of quality hardwood. Accordingly, both submitted bids based on the price of birch veneer, which costs substantially less than walnut veneer.[2] The undisputed testimony establishes that walnut veneer costs from 50% to 90% more than birch veneer. On the other hand, the decor of the main library was walnut wood, and it was desired by St. Mary's that all match. The birch veneer did not match, although it was given a walnut stain and was, accordingly, rejected by the architect and St. Mary's.

The uncertainty in the specifications as to the species of wood was carried forward in the correspondence between the project architect and Estey, and the samples furnished by both. Mr. James P. Crain, an associate of Mr. Martin, directly supervised the library construction and had most of the dealings with Estey. On May 29, 1967, Mr. Crain wrote Estey and stated in part: "The color and material selections for the stacks should be as follows:

1. All metal—To be painted Light Gray No. 56E2

2. Wood end panels—Walnut, equal in finish to Remington Rand Standard No. 250."

On June 19, 1967, Mr. Crain wrote Estey and sent a portion of Remington-Rand sample No. 250 and suggested that it was not necessary for Estey to submit wood samples unless there was some great difference between Estey and Remington-Rand finishes. Nevertheless, on August 10, 1967, Estey submitted two samples showing a slight color variation for the architect's approval. Mr. Crain replied that Sample "A" was too light and unsatisfactory. It was requested that the walnut in Sample "B" should receive a satin finish and not a glossy finish. Although there was no reference to same in any of the correspondence, the Remington-Rand No. 250 sample was actually a walnut veneer, whereas the Estey samples, including the one approved, at least as to color, were both birch veneer. Nevertheless, nothing was said in any of the correspondence relative to the species of wood required in the contract.

There is testimony that the reference to "sliced veneer" was an indication that walnut veneer was required in that walnut, being a more expensive wood, is usually sliced, whereas birch is usually rotary cut. On the other hand, there is evidence that nearly all veneer is now made of sliced

2. Both Remington-Rand and Estey's bids were based on proposals by Robert Shaw Mfg. Company to furnish birch veneer wood-end panels. After the dispute arose, Remington-Rand worked out a settlement with St. Mary's regarding the panels for the law library.

wood, although there are several different styles of slicing same, including a rotary slice, as used in preparation of the birch veneer furnished by Estey.

The contract is on a standard HUD form which gives broad and sweeping powers to the architect. Under General Conditions, it is provided in part: The architect shall determine the amount, quality, acceptability and fitness of the several kinds of work and materials which are to be paid for under this contract and shall decide all questions which may arise in relation to said work and the construction thereof. In case any question shall arise between the parties thereto relative to said contract or specifications, the determination or decision of the architect shall be a condition precedent to the right of the contractor to receive any money or payment for work under this contract affected in any manner or to any extent by such question. The architect shall decide the meaning and intent of any portion of the specifications and of any plans or drawings where the same may be found obscure or be in dispute. Any differences or conflicts in regard to their work which may arise between the contractor under this contract and other contractors performing work for the owner shall be adjusted and determined by the architect.

The trial court found that Estey, in good faith, bid the job and believed that it was complying with the specifications as written, and further, that its bid was in apparent compliance with the written specifications. The court found, however, that the wood-end panels were rejected by the project architect as not being fabricated in compliance with the contract specifications in that they were not made of walnut veneer. Further, that such rejection did not represent a change in the original specifications. The trial court concluded that, under the terms of the contract, the project architect had the sole power to decide the meaning and intent of the specifications and that since there was no

allegation or evidence that his rejection of the birch veneer wood-end panels was based upon partiality, fraud, misconduct or bad faith, such decision was binding on Estey. Finally, the court concluded that Estey's failure to furnish such walnut veneer wood-end panels, as requested by the project architect prior to the contract deadline, constituted a breach of the construction contract.

■ Such fact findings and conclusions of law are fully supported by the provisions of the contract and the testimony relative thereto. The rule applicable to this situation is stated in 10 Tex.Jur.2d, Building Contracts, Section 20, p. 24, as follows:

"Where the parties to a building contract agree to submit questions that may arise thereunder to the decision of an architect or engineer, or to make an architect or engineer the judge of proper performance of the agreement, his decision is final and conclusive, if made in accordance with the contract, and if it is express and in plain terms, unless arbitrary, capricious, or unreasonable, or unless in making it he was guilty of fraud, misconduct, or such gross mistake as would imply bad faith or failure to exercise an honest judgment. Furthermore, the decision is presumed to be correct, and to have been made while he was acting within the scope of authority."

This rule correctly states the Texas law. See: State v. Martin Bros., 138 Tex. 505, 160 S.W.2d 58 (1942); City of San Antonio v. McKenzie Construction Co., 136 Tex. 315, 150 S.W.2d 989 (1941).

Here the specifications of the contract did not specify the species of wood to be used as the veneer. By their failure to specify same, the parties thus left such decision to the project architect under the terms of the contract. He was, therefore, acting within his authority in rejecting the birch veneer wood-end panels. Appellants'

points 2 through 10 are without merit and, therefore, overruled.

Appellants' 11th point presents more difficulty in that both appellants and appellee urge that the trial court was without authority in the pleadings to render judgment deleting the wood-end panels from the contract and then deducting the unit price of the panels from the contract price. It is seen that there was no specific allegation of either party requesting a reformation of the contract. However, in its cross-action, St. Mary's prayed for cancellation and termination of said contract without further liability to it. Since all of Estey's contract had been fully performed and accepted, save for furnishing and installation of the wood-end panels, we conclude that this general allegation supports the judgment of the trial court. No complaint is presented here by either party that the trial court did not delete the proper unit price of the wood-end panels. Appellants' final point as well as appellee's first cross-point are overruled.

St. Mary's complains by its second cross-point that the trial court erred in holding that it had waived its claim for liquidated damages by reason of the breach of contract. The trial court found that the liquidated damages were waived by St. Mary's by opting for local fabrication of the wood-end panels. This conclusion is based upon the project architect's letter to Estey of November 16, 1967, wherein Estey was advised that St. Mary's would proceed with local fabrication unless word was received by 4:00 p. m. CST, November 22, 1967, as to the procedure that Estey would take to correct the rejected wood-end panels. The subsequent negotiations between the parties, although controverted, support the trial court's conclusion that St. Mary's waived its claim for liquidated damages.

The judgment of the trial court does not make any disposition of the birch veneer panels which were tendered by Estey, and have been stored by St. Mary's since their rejection by the project architect. The trial judge, in his oral pronouncement of judgment, ordered that same be returned to Estey. However, this disposition was not included in the judgment, apparently because of Estey's lack of capacity to seek relief. We have heretofore held that Estey was not barred from asserting this claim based on the interstate transaction with St. Mary's.

The judgment of the trial court is reformed to provide that title and right to possession of the rejected wood-end panels is in Estey. In all other respects, the judgment of the trial court is affirmed. The costs of this appeal are taxed against appellants.

CADENA, J., not participating.

On Motion for Rehearing.

BARROW, Chief Justice.

Our judgment of June 16, 1971, is reformed to provide as follows: "The judgment of the trial court is reformed to provide that title and right to possession of the rejected wood-end panels is in Estey. In all other respects, the judgment of the trial court is affirmed. Estey is entitled to recover the sum of Four Thousand Five Hundred Ninety-Eight and 94/100 ($4,598.94) Dollars remaining unpaid on the contract as modified by the trial court. The costs of this appeal are taxed against appellants."

In all other respects the motions for rehearing filed by appellants and by appellee are overruled.