KEITH A. NELSON COMPANY,
Appellant,

v.

R. L. JONES, INC., United States
Fidelity and Guaranty Company and
the City of Uvalde, Appellees.

No. 16291.

Court of Civil Appeals of Texas,
San Antonio.

July 16, 1980.

**352**

David H. Wiggs, Jr., Michael D. McQueen, Kemp, Smith, White, Duncan & Hammond, El Paso, Emmett Harris, Uvalde, for appellant.

Eugene B. Labay, Cox, Smith, Smith, Hale & Guenther, San Antonio, Phillip M. Hughes, Crawford, Crawford & Hughes, Uvalde, Nancy Anderson, Allen & White, San Antonio, for appellees.

OPINION

KLINGEMAN, Justice.

This is a summary judgment proceeding involving several parties and several motions for summary judgment. Appellant Keith A. Nelson Co. (Nelson) filed suit against appellees, R. L. Jones Co., Inc. (Jones), United States Fidelity and Guaranty Co. (USF&G), and the City of Uvalde (Uvalde), to recover damages allegedly sustained by appellant arising out of a subcontract between Nelson and Jones for construction of a sewage lift station for the City of Uvalde. Jones was the general contractor and United States Fidelity and Guaranty Co. was the surety under certain performance and payment bonds. Appellant and every appellee moved for summary judgment. The trial court granted summary judgment that appellant take nothing against appellees, Jones, the surety company, and the City of Uvalde. This is an appeal by Nelson from such judgment.

On December 23, 1974, Uvalde entered into a contract (prime contract) with Jones for certain utility improvements for the Uvalde Industrial Park, for the City of Uvalde, Texas. These improvements included the construction of a sewage lift station and a holding tank known as the Wood Street Lift Station. Pursuant to the requirements of said contract, Jones furnished certain performance and payment bonds. The surety on these bonds was USF&G. Under the terms of the prime contract, Jones agreed to complete the utility project for the sum of $167,157.60, and all extra work in connection therewith, under the terms stated in the general and special conditions of the prime contract. Jones also agreed, at its own costs and expense, to furnish all of the material, supplies, machinery, equipment, tools, superintendents, labor, insurance and other accessories and services necessary to complete such project in accordance with the conditions and prices stated in the Proposal, General Conditions, Supplemental General Conditions, Special Provisions of the contract, Plans, which included all maps, plats, blueprints, and other drawings and printed or written explanatory matter, Specifications and the contract documents therefor as prepared by W. H. Mullins, Inc., Consulting Engineers. The Bid Proposal (Bid For Unit Price Contracts) for the Wood Street Lift Station submitted by Jones and made a part of the prime contract was in the amount of $49,315 and such price expressly covered all expenses incurred in performing the work required under the contract documents, including all labor, materials, bailing, shoring, removal, overhead, profit, insurance, etc., to cover the work called for. Subsequently, on or about February 10, 1975, Jones entered into a contract (subcontract) with Nelson for the construction of the Wood Street Lift Station for the sum of $61,500. The subcontract reads as follows:

R. L. Jones Co., Inc. agrees to pay $61,-500.00 to the Keith Nelson Co. for the construction of the Woodstreet lift station in Uvalde, Texas. This work includes all ditch excavation, concrete work, installation of new and removal of old pumps, electrical work, cleanup and other miscellaneous items of construction. The life [sic] station sill [sic] be built according to the plans and specifications of Mullins Engineers, and be guaranteed for one year against any defect in workmanship. Partial payments will be made monthly as the engineer approves the completed work.

During the construction of the Wood Street Lift Station, Nelson encountered a

large amount of ground water which flowed into the excavations making it difficult to perform the work in accordance with the plans and specifications. At the request of Nelson, the configuration of the lift station and the construction methods were changed in an effort to overcome the problems caused by the ground water. Nelson requested additional compensation for such changes in the construction methods. This request was denied by the consulting engineers' on the ground that there were no contract provisions which authorized additional compensation under these conditions. Nelson filed suit on November 15, 1975, seeking a money judgment against appellees in the amount of (a) $129,140 for work and labor performed and materials furnished as a result of encountering subsurface conditions differing from those shown on the plans or indicated in the specifications; (b) $500,000 for consequential and special damages allegedly caused by the denial of the request for additional compensation; and (c) reasonable attorney's fees, interest and costs. Jones and USF&G subsequently filed cross–actions for indemnity over and against Uvalde in the event that judgment was rendered for Nelson for additional compensation under and by virtue of the prime contract between Jones and Uvalde. All parties filed motions for summary judgment and the trial court granted appellees' motions for summary judgment.

Nelson asserts nine points of error which may be summarized as follows: (1) the provisions of the prime contract were incorporated into the subcontract between Jones and Nelson; (2) under paragraph 21 of the General Conditions of the contract when taken in conjunction with paragraph 17 Nelson is entitled to additional compensation; (3) the provisions of paragraph 17 requiring prior written approval by Uvalde of changes in the work was waived by the conduct of appellees, and appellees are estopped to assert absence of a written change order as a bar to recovery by Nelson; (4) Nelson is entitled to recover under the doctrine of unjust enrichment; and (5) Nelson's cause of action was not barred by the Statute of Frauds, the Statute of Limi-

tations, or noncompliance with the requirements of Tex.Rev.Civ.Stat.Ann. art. 5160 (Vernon Supp. 1971–1979).

We initially discuss the defenses upon which all appellees rely.

All the appellees agree that the contract documents of the prime contract and, in particular, the general conditions of the contract were not incorporated into and made a part of the subcontract. They urge that the subcontract is a separate and distinct instrument which must be construed according to its terms and provisions. Clearly, there are no express provisions incorporating the contract documents into the subcontract. Appellant contends that the provision of the subcontract, which reads: "The life [sic] station sill [sic] be built according to the plans and specifications of Mullins Engineers," is sufficient incorporating language to make the contract documents a part of the subcontract. In actuality, the plans and specifications are only one part of the contract documents which include, among other things, the Proposal, General Conditions, Supplemental General Conditions and Special Provisions to the contract, Plans which included all maps, plats, blueprints and other drawings and printed or written explanatory materials and Specifications prepared by W. H. Mullins, Inc., Consulting Engineers.

The subcontract makes no reference at all to the prime contract nor does it incorporate by reference the "General Conditions" which are a part of the prime contract.

 Whether a later contract is to be deemed an independent one, or incorporated with or correlated to the old agreement, is to be determined by the intention of the parties as expressed in the later agreement. *M. J. Delaney Co. v. Murchison*, 393 S.W.2d 705, 710 (Tex.Civ.App.—Tyler 1965, no writ). Language used by the parties should be given its plain, grammatical meaning unless it definitely appears that the intention of the parties would thereby be defeated. *Fox v. Thoreson*, 398 S.W.2d 88, 92 (Tex.1966); *Integrated Interiors, Inc. v. Snyder*, 565 S.W.2d 350, 352 (Tex.Civ.

App.—Fort Worth 1978, writ ref'd n. r. e.). Ordinarily, the absence of any specific reference to another instrument indicates that the parties did not intend to contract with reference to the other instrument. *M. J. Delaney, Inc. v. Murchison*, 393 S.W.2d 705, 708 (Tex.Civ.App.—Tyler 1965, no writ).

■ The subcontract does not contain a "change of condition" clause and it does not incorporate the "General Conditions" which are a part of the prime contract. Appellees urge that under these circumstances, the rights, duties and obligations are to be determined by the terms and provisions of the subcontract and the contract must stand as written and be enforced accordingly. *Tower Contracting Co. v. Flores*, 157 Tex. 297, 302, 302 S.W.2d 396, 399 (1957); *George v. El Paso Water Control & Improvement Dist. No. 1*, 332 S.W.2d 144 (Tex.Civ.App.— El Paso 1960, writ ref'd n. r. e.). Appellees assert that since there is no provision for compensation in excess of the agreed amount of $61,500 in the contract, Nelson is not entitled to any additional compensation under the subcontract as a matter of law. *Republic Nat'l Life Ins. Co. v. Spillars*, 363 S.W.2d 92, 94 (Tex.1963); *Southwestern Bell Telephone Co. v. Ferguson*, 413 S.W.2d 841, 843 (Tex.Civ.App.—Houston [14th Dist.] 1967, no writ).

Whether an ambiguity exists in the contract language is a question of law for the courts to decide. *St. Paul Mercury Ins. Co. v. Price*, 329 F.2d 687, 689 (5th Cir. 1964); *Young v. De la Garza*, 368 S.W.2d 667, 670 (Tex.Civ.App.—Dallas 1963, no writ). The construction and interpretation of an unambiguous contract is also a question of law for the courts. *Myers v. Gulf Coast Minerals Management Corp.*, 361 S.W.2d 193, 196 (Tex.1962); *Tower Contracting Co. v. Flores*, 157 Tex. 297, 302, 302 S.W.2d 396, 398 (1957); *Suthers v. Booker Hospital Dist.*, 543 S.W.2d 723, 727 (Tex.Civ.App.— Amarillo 1976, writ ref'd n. r. e.); *Young v. De la Garza*, 368 S.W.2d 667, 670 (Tex.Civ. App.—Dallas 1963, no writ). Generally, the terms of a written contract which are plain and unambiguous will be enforced as written and cannot be added to, varied, or contradicted by parol testimony in the absence of allegations of fraud, accident or mistake. *Davis v. Andrews*, 361 S.W.2d 419, 424 (Tex. Civ.App.—Dallas 1962, writ ref'd n. r. e.); *American Mfg. Co. of Texas v. Witter*, 343 S.W.2d 943, 947 (Tex.Civ.App.—Fort Worth 1961, no writ).

■ Appellees further assert that, even if the documents of the prime contract are incorporated in the subcontract, Nelson is prohibited from recovery under the terms and provisions of the prime contract. The pertinent provisions of the prime contract here involved read as follows:

17. CHANGES IN WORK

No changes in the work covered by the approved contract documents shall be made without having prior written approval of the Owner. . .

18. EXTRAS

. . . All the work of the kind bid upon shall be paid for at the price stipulated in the proposal, and no claims for any extra work or materials shall be allowed unless the work is ordered in writing by the Owner or its Architect/Engineer, acting officially for the Owner, and the price is stated in the order.

 . . . . .

21. SUBSURFACE CONDITIONS FOUND DIFFERENT

Should the Contractor encounter subsurface and/or latent conditions at the site materially differing from those shown on the Plans or indicated in the Specifications, he shall immediately give notice to the Architect/Engineer of such conditions before they are disturbed. The Architect/Engineer will thereupon promptly investigate the conditions, and if he finds that they materially differ from those shown on the Plans or indicated in the Specifications, he will at once make such changes in the Plans and/or Specifications as he may find necessary, and any increase or decrease of cost

resulting from such changes to be adjusted in the manner provided in paragraph 17 of the General Conditions.

22. CLAIMS FOR EXTRA COSTS

No claim for extra work or cost shall be allowed unless the same was done in pursuance of a written order of the Architect/Engineer approved by the Owner, as aforesaid, and the claim presented with the first estimate after the changed or extra work is done. . . .

. . . . .

35. ARCHITECT/ENGINEER AUTHORITY

The Architect/Engineer shall give all orders and directions contemplated under this contract and specifications relative to the execution of the work. The Architect/Engineer shall determine the amount, quality, acceptability, and fitness of the several kinds of work and materials which are to be paid for under this contract and shall decide all questions which may arise in relation to said work and the construction thereof. The Architect/Engineer's estimates and decisions shall be final and conclusive, except as herein otherwise expressly provided. In case any question shall arise between the parties hereto relative to said contract or specifications, the determination or decision of the Architect/Engineer shall be a condition precedent to the right of the Contractor to receive any money or payment for work under this contract affected in any manner or to any extent by such question.

Under the above provisions of the prime contract the parties agreed (a) that no changes in work due to changes in conditions would be made without prior written approval of the owner; (b) that no claims for any extra work would be allowed unless agreed in writing by owner and architect/engineer with the price stated in the order; and (c) that the decision of the architect/engineer would be final and conclusive.

It is undisputed that Nelson did not obtain any prior written approval of any extra work for a change in conditions. It is also undisputed that the consulting engineer refused to approve a written change order based on different subsurface conditions. The summary judgment evidence establishes that Nelson did not comply with paragraphs 17, 18, 21 or 22 of the General Conditions, above quoted.

William H. Mullins, Uvalde's consulting engineer, testified by deposition that he had no knowledge or indication that unusual volumes of ground water would be present at the construction site. He further stated that actual test borings were the only way of determining subsurface ground water conditions. He stated that test borings were usually not done by the owner on a municipal capital improvements project due to the long time between the preparation of plans and specifications and the opening and awarding of bids. He testified that, in connection with the prime contract, Uvalde made no test borings; that the contract documents provide that the contractors make their own investigation in connection with the construction site; that normally in connection with contracts involving sewage stations, sewage lines, water mains, and so on, contractors make their own test borings and look for any extra costs involved. He stated that there was no way to determine the water conditions other than drilling actual test borings and most contractors do this in preparation of their bids.

Mullins' plans and specifications indicate no particular subsurface conditions. There are no representations whatsoever as to the subsurface conditions in the plans and specifications. Mullins stated that two reasons for handling claims in this manner are that a contractor will not be misled and to encourage a contractor to make his own investigation and test–hole borings.

The gist of Nelson's testimony by deposition may be summarized as follows. He stated that he first discussed bids on the lift station in December, 1974, when another

bidder asked Nelson for price quotations. Jones called him later and wanted him to bid on the lift station, which he did. His bid to Jones was lower than his earlier quotation to the unsuccessful bidder. In his earlier bid he reviewed the material in the "specs" booklet. One of his employees conducted a site inspection by looking at a twelve–foot ditch in the lift station area and also talked to several backhoe operators who had worked in the area. Nelson said he talked to Mullins and other persons about the lift station and was told that the old lift station had been constructed without any water problems. He stated that he had reviewed the documents he was given and he felt there was nothing to be concerned about. He also stated that he talked to an unsuccessful bidder who said that there might be some ground water at a lower level. He said that he made no test borings because there was an existing station, and it would have cost him about $500 to have test borings made. He stated that his initial bid to Jones was $73,000, but that after negotiations he reduced it to $61,500. He admitted that he had no written contract with Uvalde. He acknowledged that he knew that part of the general conditions to the prime contract included a requirement that any extra work had to be approved in writing by the owner.

He discussed in some detail the water problems that he had encountered and that he had written to Jones of such problems, but had received no reply. He said that he had talked to Mullins and presented some sketches of changes that he had in mind and was asked for a written change order and was told that he would get one. He stated that on July 21, 1975, he wrote Mullins seeking approval of the detailed drawings he had submitted in April but never received written approval. He testified that there was no written agreement at any time that Jones and Uvalde would be responsible for extra costs. He did state that he had been paid the contract price provided for in the contract, in full, but had not received any of the requested additional compensation.

Paragraph 35 of the General Conditions of the contract provide that the decision of the architect/engineer shall be final and conclusive. It is undisputed that Mullins, the consulting engineer, did not agree to a written change order to cover the additional costs because of the change in construction method. Mullins testified that no change order was given because none was warranted and because Uvalde did not request the change. He stated that, while Nelson did make some requests for changes, he (Mullins) did not draft any new plans or approve any new plans. He stated that he told Nelson he would not approve any additional compensation for changes which Nelson wanted to make in construction methods and configuration and that at no time did he ever give any written approval to any changes or any request for additional compensation.

In addition to the defenses hereinabove discussed applicable to all appellees, Uvalde has other defenses which it urges entitled it to a summary judgment. Such defenses are that (1) it was not a party to the Nelson subcontract and there is no privity of contract between Uvalde and Nelson; (2) Nelson has received and accepted full and final payment of the consideration provided for in its subcontract without reservations, and Jones, the prime contractor, has also received and accepted full payment of the compensation provided for in its contract with Uvalde, and Nelson is, therefore, precluded from any further recovery; and (3) the terms and provisions of article III, § 53, of the Texas Constitution.

Uvalde is an incorporated city or municipality of the State and is the owner in the prime contract. The pertinent portions of the prime contract here relied upon by Uvalde are as follows:

26. ACCEPTANCE OF FINAL PAYMENT AS RELEASE

The acceptance by the Contractor of final payment shall be and shall operate as a release to the Owner of all claims and all liability to the Contractor for all things done or furnished in connection with this work and for every act and neglect of the

Owner and others relating to or arising out of this work. No payment, however, final or otherwise, shall operate to release the Contractor or his Sureties from any obligation under this contract or the Performance and Payment Bond.

. . . . .

34. SUBCONTRACTING

The contractor may utilize the services of specialty subcontractors on those parts of the work which, under normal contracting practices, are performed by specialty subcontractors.

. . . . .

Nothing contained in this contract shall create any contractual relation between any subcontractor and the Owner.

Section 53 of article III of the Texas Constitution provides as follows:

The Legislature shall have no power to grant, or to authorize any county or municipal authority to grant, any extra compensation, fee or allowance to a public officer, agent, servant or contractor, after service has been rendered, or a contract has been entered into, and performed in whole or in part; nor pay, nor authorize the payment of, any claim created against any county or municipality of the State, under any agreement or contract, made without authority of law.

Tex.Const. art. III, § 53.

The following cases are pertinent to the case before us: *State v. Martin Bros.*, 138 Tex. 505, 160 S.W.2d 58 (1942); *City of Dallas v. Shortall*, 131 Tex. 368, 114 S.W.2d 536 (1938); *Powell v. State*, 118 S.W.2d 960 (Tex.Civ.App.—Austin 1938, writ ref'd).

In *Powell v. State*, 118 S.W.2d 960 (Tex. Civ.App.—Austin 1938, writ ref'd), suit was brought by the contractor for extra compensation growing out of a contract between Powell and the State Highway Commission for construction of 12.55 miles of highway. The Highway Commission had sent a notice to bidders in which the approximate quantities of materials to be removed were erroneous in that solid rock to be removed was understated and common earth to be removed was overstated. In affirming an instructed verdict in favor of the State, the court stated:

It is clear that there was no bad faith on the part of the State in the representations, if they be treated as such, made by the Highway Department. Nor was Powell entitled to take such estimates of the quantities of materials to be encountered as representations of positive facts on which he could rely without investigation on his part to determine their truth or falsity . . .

While the facts in the instant case present an instance of hardship and misfortune, it is one where, having made an express contract fixing his liability, the law can afford appellant no relief. If, under said contract, appellant had encountered less solid rock excavation, instead of more, than the quantities stated in the estimates of the Highway Department, manifestly the State would be in no position to reduce its payment to him below the contract price. Consequently Powell is in no position to claim an increase over that amount. [Citation omitted]

These conclusions as to the instant case have been reached independent of the power of the legislature under Art. 3, § 53, of the Constitution of Texas, Vernon's Ann. St. Const. art. 3, § 53, prohibiting the payment of extra compensation to a public contractor after a contract with him has been entered into and performed in whole or in part, to make or authorize such payment. Without passing upon that question here, that provision of the Constitution itself, in view of the undisputed facts of this case, would seem to present an insurmountable obstacle to appellant's right of recovery. [Citations omitted]

118 S.W.2d at 964.

In *State v. Martin Bros.*, 138 Tex. 505, 160 S.W.2d 58 (1942), suit was brought for additional compensation for extra work and expenses in carrying out the contract because of changes made by the state engineer in the plans and specifications after the contract was executed. Plaintiff as-

serted that the manner in which they were forced to carry out the contract because of such changes was not anticipated and was far more expensive. The highway engineer denied plaintiff's claim for additional compensation. In affirming the trial court's judgment that plaintiff take nothing the supreme court said:

> Plaintiffs claim their rights under the contract executed by themselves with the Highway Department. The contract specifically provides, in addition to the other provisions set out in this opinion, that the Highway Engineer shall pass upon questions of dispute arising with reference to the enforcement of such contract.
>
> The contract also provides that the decision of the Highway Engineer shall be final and conclusive. The Highway Engineer denied the claim of the plaintiffs. They cannot escape the binding effect of the decision of the Highway Engineer, without alleging and proving that his decision in this case was based upon partiality, fraud, misconduct, or gross error. No such attack was made upon the decision, either by pleadings or by proof, and, therefore, under the decisions of this Court plaintiffs are not entitled to recover herein. *Austin Bridge Co. et al. v. Teague*, Tex.Sup., 152 S.W.2d 1091; *City of San Antonio v. McKenzie Construction Co.*, 136 Tex. 315, 150 S.W.2d 989; 9 Amer.Jur., p. 26, § 36.

138 Tex. at 511, 160 S.W.2d at 60.

The case of *City of Dallas v. Shortall*, 131 Tex. 368, 114 S.W.2d 536 (1938), presented some of the same problems and conditions involved in the case before us. The City of Dallas entered into a contract with Central Contracting Company to construct a tunnel or storm sewer in which Central Contracting's bid was $45,014.82. The plans and specifications contained a profile or map which indicated a "rock line" which was based upon preliminary borings by the city engineering department. No effort was made by the engineering department to determine the nature of the soil at the place where the tunnel was to be located. Central Contracting Company sublet the prime contract to Shortall who took over and as-

sumed the place of Central Contracting under the contract. The stated consideration was $45,014.82 less ten per cent to be retained by Central Contracting. After construction began it was discovered that the location of the tunnel was not through solid rock causing a change in the method of construction. Because of this change Shortall incurred heavy expenses in sinking a shaft, excavating, and disposing of the soil. The City of Dallas refused to make any allowance for extra costs and Shortall brought suit for these additional costs. The trial court entered judgment in favor of Shortall for additional compensation and the court of civil appeals affirmed. The Commission of Appeals reversed the lower courts and entered judgment in favor of the City of Dallas, stating:

> If plaintiff were attempting to recover under or by virtue of the contract, then undoubtedly the provisions with reference to 'extra,' 'omitted,' or 'changed work,' and the provisions with reference to the decision of the engineer, as well as certain charter provisions of the City of Dallas would control and would prevent a recovery. Constitutional questions might also be encountered. [Citations omitted]

131 Tex. 375, 114 S.W.2d at 540.

The court then pointed out that misrepresentation must necessarily be the basis of any recovery. The alleged misrepresentation was that, by the profile or plat mentioned which was a part of the plans and specifications, the City made an affirmative representation that a solid rock formation existed along the whole course of the tunnel; that Shortall relied upon such representations in making a contract with Central Contracting Company; that such representations were found to be untrue; and that Shortall suffered injury by the reason thereof to the extent of the extra expenses incurred by him in constructing the tunnel under the conditions actually encountered.

The court in its opinion stated:

> His case, therefore, must rest upon the proposition that in making his agreement as a subcontractor under the Central Con-

tracting Company he himself had a right to rely upon the alleged representation, and did so, was misled thereby, and suffered damages as alleged.

While entertaining the gravest doubt that plaintiff is within the class of those who were entitled to rely upon the purported representation, yet on account of the importance of the matter, we have decided to discuss the question as if plaintiff occupied the position of the bidder to whom the contract was awarded.

\* \* \* \* \* \*

From these decisions, and many others which might be cited, we deduce the conclusion that in order for plaintiff to be entitled to recover damages for extra expenses incurred by him as alleged, it must appear that the so–called representation that the tunnel could be constructed through solid rock was made as an affirmative statement of fact, or as a positive assertion, and made under such circumstances, or with such accompanying assurances, as justified plaintiff in relying thereon, without investigation on his part; and that he in fact made no independent investigation on his part to ascertain the truth.

\* \* \* \* \* \*

The jury found that the City of Dallas, through its representatives and agents, knew and recognized that plaintiff was performing the entire construction of the tunnel as a *subcontractor.* This does not constitute a finding that the city, during the time there was delay in furnishing the right of way, knew anything about the subletting of the work. But even if this were true, the mere recognition of plaintiff as a subcontractor created no contract relation between him and the city.

131 Tex. at 376–382, 114 S.W.2d at 541–544.

■ Nelson's contention that he is entitled to recover under the doctrine of unjust enrichment is without merit. There is no evidence that the additional cost incurred by Nelson in completing the contract in any way added to the value of the improve-

ments contracted by Nelson or that the appellees were in any manner unjustly enriched. That Nelson through miscalculation, inadvertence, or misfortune, expended over $100,000.00 to complete the work called for in the contract which he had contracted to finish and complete for $61,-500, does not mean that the improvements were worth over $100,000 or were worth any more than the amount contracted for. Such additional expenses cannot form the basis for recovery under the theory of unjust enrichment.

■ We have concluded that: (1) the contract documents and, in particular, the general conditions of the prime contract, were not incorporated into or made a part of the subcontract; (2) assuming that they were so incorporated, Nelson is still precluded from recovery under the provisions of the prime contract for the reasons hereinbefore set forth and discussed; (3) Nelson received and accepted without reservation the $61,500 consideration provided for in the prime contract and is barred from any other additional recovery; and (4) all appellees are entitled to judgment as a matter of law.

All of Nelson's points of error have been considered and all are overruled. The summary judgment is affirmed.