

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-14-00019-CV

J.R.'S LANDSCAPING & SPRINKLER SYSTEMS, INC., APPELLANT

V.

CITY OF CROSBYTON, APPELLEE

On Appeal from the 72nd District Court
Crosby County, Texas
Trial Court No. 2010-7347, Honorable Ruben Gonzales Reyes, Presiding

September 21, 2015

## MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellant J.R.'s Landscaping & Sprinkler Systems, Inc. brought suit against the City of Crosbyton, Texas, alleging breach of its construction contract with the City. The City brought a counterclaim, asserting J.R.'s had failed to perform the contract as required.[1] Each sought damages. After a bench trial, the court awarded the City its damages for the cost of completion of the project.

---

[1] The elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4)

On appeal, J.R.'s brings two issues, one contending the court erred by rejecting its claim for damages, the second contending it erred by entering judgment for the City. After we abated the appeal, the court signed findings of fact and conclusions of law.[2] We will affirm.

## Background

The contract called for J.R.'s to furnish materials and labor for the construction of new concrete sidewalks, curbs and gutters, access ramps, handrails and related work at locations in downtown Crosbyton. The final contract amount was $142,632.80. During construction J.R.'s requested, and was paid, $64,307.

Chester Carthel of Carthel's Engineering served as engineer and owner's representative. At a point, a difference of opinion arose between Carthel and the City regarding J.R.'s completion of the work. Carthel received J.R.'s notice that work was substantially complete, inspected the work, concluded the project was substantially complete and complied with the contract, and approved J.R.'s application for payment of the remaining contract amount. At trial, Carthel agreed it was his opinion that the work was substantially complete and that the application should have been paid.

The City was dissatisfied with the work. The mayor testified he told J.R.'s on several occasions that he was not satisfied with the appearance of the sidewalks and complained about defects such as pitting. J.R.'s attempted repairs to several areas by

_____

damages sustained by the plaintiff as a result of the breach. *Wright v. Christian & Smith*, 950 S.W.2d 411, 412 (Tex. App.—Houston [1st Dist.] 1997, no writ).

[2] *See J.R.'s Landscaping & Sprinkler Sys. v. City of Crosbyton*, No. 07-14-00019-CV, 2014 Tex. App. LEXIS 12666 (Tex. App.—Amarillo, November 21, 2014, no pet.) (mem. op.).

patching the concrete, but the mayor testified the patching was not successful. He said J.R.'s was "going to get us a proposed way of taking care of the problem. And then we, the council, would approve." He testified he never received a proposed plan of action from J.R.'s, who merely attempted more patches. The City never formally accepted the work.

The City hired another engineer, Michael Adams, who testified he found several issues with the concrete, including exposed aggregate rock, spalling, sloping and rusting of exposed rebar. He expressed the opinion the workmanship was "at a low level," and recommended that the areas of concrete containing the defects be torn out and replaced, at an estimated cost of $160,000.

When the City did not pay its final payment application, J.R.'s filed suit. On the City's counterclaim, the court awarded it damages of $160,000, interest and attorney's fees.

Analysis

All the trial court's findings of fact and conclusions of law favor the City. In support of its first issue, J.R.'s contends the evidence established as a matter of law that the City breached the contract by failing to pay J.R.'s final invoice. *See Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 241 (Tex. 2001) (per curiam); *Barnett v. Coppell N. Tex. Court, Ltd.,* 123 S.W.3d 804 (Tex. App.—Dallas 2003, pet. denied) (standard of review). To reach that conclusion, J.R.'s argues that the contract unambiguously provided that acceptance of the project by the owner's representative was conclusive and binding on the City. To sustain its contention, we would be required to agree that J.R.'s reading of

3

the contract is the only reasonable reading. *See, e.g., Columbia Gas Trans. Corp. v. New Ulm Gas*, 940 S.W.2d 587, 589 (Tex. 1996); *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 517, 243 S.W.2d 154, 157 (Tex. 1951) (ambiguity of contracts).

J.R.'s relies on a section of the contract with the title, "Contract Closeout."[3] Its subsections include those entitled "substantial completion," "final inspection," and "final payment." It contains a statement reading, "The Owner's Representative will determine if the project is Substantially Complete." It also contains the provision that, within 14 days of notice from the contractor that he believes the work is substantially complete, the Owner's Representative will inspect the job and determine if he agrees. The "final inspection" subsection contains a similar requirement for a response from the Owner's Representative to the notice from the contractor.

But the provisions on which J.R.'s relies are not the only contract terms addressing the subject of payments on completion of the work. The contract's General Contract Conditions contain a section entitled "Payments to Contractor," with subsections entitled "partial payments," and "final payment." As the City points out, language there appears stating that the contractor's "requisition for final payment," will be prepared "[a]fter final inspection and acceptance by the Owner of all work under the Contract." Another provision, contained in the "payment procedures" subsection of a section entitled "Administrative Requirements," states that the "Owner's Representative

---

[3] In addition to several pages of General Contract Conditions, the contract document includes several pages of specifications and other provisions, some of which address topics also addressed in the General Contract Conditions. The General Contract Conditions and these latter provisions appear taken from different contract forms. The language of the General Contract Conditions and these latter provisions of the contract is not consistent, and each contained phrases not used in the other. For example, the General Contract Conditions refer to Carthel as "Engineer," while the latter contract pages refer to the individual filling his role as the "Owner's Representative," a phrase not appearing in the General Contract Conditions. The capitalized, but undefined, phrase "Substantially Complete" appears in the latter provisions but not in the General Contract Conditions.

will review pay request [sic] and recommend action to the Owner within 14 calendar days of submission."[4]

J.R.'s cites Texas cases describing contract provisions it contends are like those in its contract with the City. *See State v. Martin Bros.*, 160 S.W.2d 58, 60-61 (Tex. 1942) (contract stated engineer's decisions would be "final"); *City of San Antonio v. McKenzie Constr. Co.,* 150 S.W.2d 989, 998 (Tex. 1941) (certificate of final acceptance to be issued by engineer); *Tribble & Stephens Co. v. RGM Constructor, L.P.*, 154 S.W.3d 639, 652 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (plurality op.) (contractor's work subject to "final approval" of project architect). The clear and consistent contract provisions described in those cases are unlike the uncertain and conflicting language that confronted the court here. We do not agree the contract here unambiguously provides that Carthel's decision regarding completion of the work would be final and binding on the City.[5] J.R.'s contention effectively ignores the contract language indicating it was up to the City to grant final acceptance.

We overrule J.R.'s first issue.

In its second issue, J.R.'s argues the trial court erred by entering judgment in favor of the City. The court found that the concrete's exposed aggregate and spalling

---

[4] Other provisions of the General Contract Conditions emphasize the role of the Owner, here the City, with respect to acceptance of the work. An inspection provision states, "The Owner shall have the right to reject defective material and workmanship or require its correction. Unacceptable workmanship shall be satisfactorily corrected." Another general contract condition states that "all instructions and approval with respect to the work will be given to the Contractor only by the Owner through its authorized representatives or agents." Note that provision refers to the Owner, not the Engineer.

[5] As stated in the trial court's findings of fact, Joe Ramirez, the owner of J.R.'s, "agreed at trial that the city could 'decide whether or not to accept or reject' the work." And, although Carthel was hired to be the engineer on the project, "under the terms of the Agreement, the City had the ultimate right to decide to accept or reject the work and was free to disagree with Carthel's opinions."

5

issues were a result of poor workmanship by J.R.'s, and found the workmanship was not in compliance with the contract. It concluded J.R.'s breached the contract by failing to construct or complete the project in accordance with its terms. J.R.'s cites *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195 (Tex. 2004), and acknowledges its holding that one contracting party's performance may be excused if the other materially breaches the contract. *Id.* at 196. J.R.'s asserts, however, there is no evidence it had committed a material breach when the City failed to make payment. The assertion is founded on Carthel's agreement the work was substantially complete. J.R.'s argument ultimately relies, then, on the same contention that underlies its first issue, the assertion the contract made Carthel's decision final and binding on the City. Having rejected J.R.'s contention that, as a matter of law, the contract made Carthel's determination final, we cannot agree the trial court was required to disregard the evidence of poor workmanship and defective concrete work cited in the court's findings.[6] We overrule J.R.'s no-evidence issue. *See Catalina v. Blasdel,* 881 S.W.2d 295, 296-97 (Tex. 1994) (standard of review for no-evidence issue on appeal).

---

[6] J.R.'s does not directly challenge any of the trial court's findings of fact. Its findings include the facts that an inspection after J.R.'s substantial completion notice showed large areas of concrete containing "exposed aggregate and spalling" as well as "substantial cracking of the concrete in those areas." The finding continues, "[e]xposed aggregate and spalling are defects in concrete that are a delamination of the top layer of concrete. This exposes the inner layers of the concrete to weather elements. A concern is with a freeze-thaw issue, where water can penetrate into the concrete through the exposed aggregate or spalling areas, and when that water freezes, it will expand and damage the concrete. Exposed aggregate and spalling shorten the life of the concrete." Further, "[t]he concrete was not smooth, and it was not aesthetically pleasing," an "important aspect of the project" to "improve the look of the downtown area."

Conclusion

Having resolved each of J.R.'s issues against it, we affirm the judgment of the trial court.

James T. Campbell
Justice