**TEXAS DEPARTMENT OF TRANSPORTATION,**
Petitioner,

v.

**JONES BROTHERS DIRT & PAVING CONTRACTORS, INC.,**
Respondent.

No. 00–1067.

Supreme Court of Texas.

Argued on Jan. 16, 2002.

Decided June 27, 2002.

John Cornyn, Attorney General of the State of Texas, Andy Taylor, First Assistant Attorney General, Jack F. Gilbert, Assistant Attorney General, Ronda Leigh Neff, Grady Click, Jeffrey S. Boyd, Office of the Attorney General, Austin, for Petitioner.

Douglass D. Hearne, Hearne & Eppright, Ann R. Powers, Hearne Eppright & Gest, Austin, for Respondent.

Justice BAKER delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice HECHT, Justice OWEN, Justice HANKINSON, Justice O'NEILL, Justice JEFFERSON and Justice RODRIGUEZ joined.

Jones Brothers Dirt & Paving Contractors' contract with the Texas Department of Transportation provides that, prior to terminating or removing a Disadvantaged Business Enterprise (DBE) subcontractor from a project, Jones had to demonstrate "to the satisfaction of the Business Opportunity Program [BOP] Office in Austin" that the DBE was unwilling or unable to perform. We decide the appropriate standard for reviewing the BOP's decision under the contract's satisfaction clause. We also decide whether section 201.112 of the Texas Transportation Code, which establishes administrative remedies for contract disputes with TxDOT, provides the exclusive remedy for Jones's common-law claims for breach of contract and declaratory relief.

We conclude that the Administrative Law Judge correctly reviewed the BOP's decision for whether it was based on partiality, fraud, misconduct, or gross error. Therefore, the court of appeals erroneously instructed the trial court to remand the administrative claim to the ALJ to review the BOP's decision under a different standard. 24 S.W.3d 893, 899–900. Furthermore, we conclude that the Transportation Code provides the exclusive remedy for Jones's common-law claims against TxDOT. Thus, the court of appeals incorrectly remanded claims to the trial court for Jones to replead facts showing waiver of sovereign immunity. 24 S.W.3d at 902. Accordingly, we reverse the court of appeals' judgment remanding Jones's common-law claims to the trial court for repleading, dismiss those claims for lack of jurisdiction, and remand the remaining claim to the trial court for proceedings consistent with this opinion.

## I. BACKGROUND

Jones contracted with TxDOT to reconstruct 4.28 miles of FM 170 in Presidio County. Because federal funds partly supported the project, the contract required Jones to subcontract at least ten percent of the work to a DBE. Also, because of this funding, the federal government required Jones's contract with TxDOT to have a provision requiring Jones to obtain approval from TxDOT's BOP before terminating a DBE that Jones hired for a project:

> Prior to terminating or removing a DBE subcontractor named in the commitment, the Contractor must demonstrate to the satisfaction of the Business Opportunity Program Office in Austin the originally designated DBE was not able or willing to perform.... Any substitutions of DBEs shall be subject to approval by the Business Opportunity Program Office in Austin.

The contract authorized Jones to determine what work the DBE that Jones chose would perform. Jones contracted forty-two percent of the work to AK Concrete, a DBE. However, Jones and TxDOT soon became concerned that AK Concrete was unqualified, and its substandard work had to be corrected as the project progressed. Jones formally notified AK Concrete that its work was unsatisfactory, and then attempted to terminate AK Concrete from the project. Jones also notified the BOP that it wanted to replace AK Concrete with another DBE subcontractor.

The BOP, a TxDOT subdivision charged with administering the DBE programs, requested that Jones provide documents to demonstrate that AK Concrete was unable or unwilling to perform. After reviewing the documentation Jones provided, and after interviewing Jones and AK Concrete, the BOP concluded that, although AK Concrete's work was substandard and had to be corrected, there was no evidence that the problems had delayed the project. Therefore, the BOP denied Jones's request to replace AK Concrete.

Eventually, TxDOT discharged AK Concrete for attempting to bribe a TxDOT inspector. But by that time, Jones could no longer secure a substitute subcontractor and thus completed the work itself. Because of this, Jones finished the job late, and TxDOT assessed $22,500 in liquidated damages against Jones for failing to meet the contract deadline.

Jones then initiated administrative proceedings under the Transportation Code to recover about $139,000 in additional costs, which included a refund of the $22,500 in liquidated damages that TxDOT assessed against Jones. *See* TEX. TRANSP. CODE § 201.112. TxDOT's contract claims committee denied Jones's claim. Next, Jones requested a contested case hearing in the

State Office of Administrative Hearings. *See* TEX. TRANSP. CODE § 201.112(b); TEX. GOV'T CODE §§ 2001.051, 2003.021(b)(1). The ALJ determined that Jones was not liable to TxDOT for the liquidated damages, but she denied Jones's claims for the additional costs related to Jones's finishing AK Concrete's work. The ALJ determined that the BOP's decision denying Jones's request to terminate its DBE "was reasonable and was not based on partiality, fraud, misconduct, or gross error." TxDOT adopted the ALJ's proposed decision to reimburse Jones the liquidated damages and deny additional damages.

Jones sought substantial evidence review of TxDOT's decision in the trial court. *See* TEX. TRANSP. CODE § 201.112(d); TEX. GOV'T CODE § 2001.171. In that suit, Jones also raised original claims for common-law breach of contract, declaratory judgment, and attorney's fees. TxDOT answered and asserted sovereign immunity against Jones's original claims. Without issuing findings of fact or conclusions of law, the trial court affirmed the part of TxDOT's order reimbursing the liquidated damages, but it reversed the part of the order denying additional damages. The trial court then rendered judgment for Jones for $139,077 in damages, which included the $22,500 in liquidated damages, plus interest and attorney's fees.

The court of appeals reversed the trial court's judgment. First, the court of appeals remanded the administrative claim to the trial court with instructions to remand to the ALJ to review the BOP's decision denying Jones's request to terminate AK Concrete under a different standard of review. 24 S.W.3d at 899–900. Second, the court of appeals concluded that the trial court erred because it did not rule on TxDOT's plea to the jurisdiction and, instead, impliedly overruled it when it rendered the final judgment. The court of appeals noted that, because Jones's petition failed to allege facts showing a waiver of TxDOT's sovereign immunity for the common-law breach of contract and declaratory judgment claims, Jones should have an opportunity to amend. 24 S.W.3d at 902. Therefore, the court of appeals remanded these claims to the trial court to allow Jones an opportunity to replead "waiver by conduct" as an exception to TxDOT's sovereign immunity. 24 S.W.3d at 901–02. Because the court of appeals did not affirm Jones's recovery under any grounds, it did not decide if Jones could recover attorney's fees. 24 S.W.3d at 902. Both parties petitioned this Court for review.

## II. ADMINISTRATIVE PROCEEDING—JUDICIAL REVIEW

Jones's contract claim against TxDOT—in the administrative proceeding and in the trial court—seeks to recover, among other things, the costs Jones allegedly incurred because the BOP did not approve its request to replace the DBE. In the trial court, Jones claimed that the ALJ committed an error of law, because she applied the wrong standard when she reviewed the BOP's decision to deny Jones's request to terminate the DBE. Jones asserts that the ALJ should have reviewed the BOP's decision under a "reasonableness" standard, because that standard applies when reviewing a decision under a "satisfaction" contract. *See Black Lake Pipe Line Co. v. Union Constr. Co.*, 538 S.W.2d 80, 88 (Tex. 1976), *overruled in part on other grounds, Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989). On the other hand, TxDOT asserts that the ALJ properly reviewed the BOP decision under the partiality, fraud, misconduct, or gross error standard, because that standard applies when reviewing an agreed-upon referee's decision. *See City of San Antonio v. McKen-*

*zie Constr. Co.,* 136 Tex. 315, 150 S.W.2d 989, 996 (1941).

The court of appeals agreed with Jones, reversed the trial court's judgment, and remanded the case to the trial court. The court of appeals determined that, because the BOP is a TxDOT subdivision, the satisfaction clause was effectively subject to TxDOT's sole determination. 24 S.W.3d at 899. Relying on *Black Lake,* the court of appeals concluded that the ALJ committed an error of law when it reviewed Jones's contract claim, because the proper review standard is reasonableness rather than partiality, fraud, misconduct, or gross error. 24 S.W.3d at 899–900. Thus, the court of appeals instructed the trial court to remand to the ALJ to decide whether the BOP's decision to deny Jones's request to terminate AK Concrete was unreasonable. 24 S.W.3d at 899–900.

## A. APPLICABLE LAW

There are two different standards for reviewing decisions under a contract's "satisfaction" provision. Which standard applies depends on the nature of the contract involved. The first standard— whether the decision was based on partiality, fraud, misconduct, or gross error—is derived from our decision in *McKenzie,* 150 S.W.2d at 989. In *McKenzie,* the Court held that "[w]hen parties to a building contract agree to submit questions which may arise thereunder to the decision of the engineer, his decision is final and conclusive; unless in making it he is guilty of fraud, misconduct, or such gross mistake as would imply bad faith or failure to exercise an honest judgment." *McKenzie,* 150 S.W.2d at 996.

Texas courts have applied this standard in other cases in which the contract designates an engineer on the building project to determine whether some aspect of performance suffices under a satisfaction clause. *See State v. Martin Bros.,* 138 Tex. 505, 160 S.W.2d 58, 61 (1942) (plaintiff must allege and prove that State highway engineer's decision was based on partiality, fraud, misconduct, or gross error); *Austin Bridge Co. v. Teague,* 137 Tex. 119, 152 S.W.2d 1091, 1092 (1941) (applying partiality, fraud, misconduct, or gross error standard of review to "State Highway Engineer's" decision under satisfaction clause); *State v. Clark,* 695 S.W.2d 673, 675 (Tex. App.-Austin 1985, no writ) (court will set aside State highway engineer's decision only if plaintiff proves it was based on partiality, fraud, misconduct, or gross error); *Austin Bridge Co. v. State,* 427 S.W.2d 925, 937 (Tex.Civ.App.-Austin 1968, writ ref'd n.r.e.) (absent pleadings and proof that State engineer's decision was based on partiality, fraud, misconduct, or gross error, engineer had exclusive and final authority to determine satisfaction of performance).

The second review standard—whether the decision was "reasonable"—applies when the party to the contract has the ultimate authority to determine whether a satisfaction clause has been satisfied. *See Black Lake,* 538 S.W.2d at 88–89 (adopting reasonableness test because construction contract provided that one party to contract could overrule its own inspectors' decision about whether performance was satisfactory); *Cranetex, Inc. v. Precision Crane & Rigging of Houston, Inc.,* 760 S.W.2d 298, 302 (Tex.App.-Texarkana 1988, writ denied) (applying reasonableness test because a party to the contract and not a designated expert had final determination about satisfaction of performance). The objective reasonableness standard, which is less onerous to prove, allays concerns that agreements conditioned upon one party's satisfaction might be illusory because they could be vulnerable to that party's whim or bad-faith with-

holding of approval. *Black Lake*, 538 S.W.2d at 88.

## B. ANALYSIS

 We conclude that the ALJ applied the correct review standard—partiality, fraud, misconduct, or gross error—to review the BOP's decision to deny Jones's request to remove AK Concrete from the job. In *Black Lake*, this Court had to decide whether the contract required the prime contractor and subcontractor to perform additional work for Black Lake, or whether the work was extra-contractual and therefore compensable in *quantum meruit*. *Black Lake*, 538 S.W.2d at 86. To prove that the work was not "extra" but was required under the contract, Black Lake relied on the prime contract and the subcontract, which both stated that the decisions of Black Lake's inspectors under the work-performance satisfaction clauses were "final and conclusive" on the contractors but were not binding on Black Lake. *Black Lake*, 538 S.W.2d at 88. Black Lake contended that, as long as the inspectors' decisions to order additional work were not based on fraud, misconduct, or gross mistake, the Court should deem the work "required" under the contract. *Black Lake*, 538 S.W.2d at 88. The Court disagreed.

The Court first noted that, in the cases Black Lake relied upon, the contracts provided that an engineer's or architect's decision under a satisfaction clause would bind *all* the parties. *Black Lake*, 538 S.W.2d at 88 (citing *Martin Bros.*, 160 S.W.2d at 58; *Teague*, 152 S.W.2d at 1091; *McKenzie*, 150 S.W.2d at 989). Then, the Court observed that, in contrast, the Black Lake contracts provided that the inspectors' decisions were final and conclusive *only* for the contractors, while Black Lake could overrule the inspectors' decisions. Because a contract conditioned on satisfying a party's "whim" or "caprice" could be illusory, the Court concluded that the party's decision about whether performance is satisfactory must be objectively reasonable. *Black Lake*, 538 S.W.2d at 88. Applying that standard to the facts, the Court decided that the contractors could recover for the additional work if it was "not reasonably within the scope of the contract's technical specifications" and not simply if Black Lake's inspectors ordered the additional work in "the absence of fraud, misconduct, or gross mistake." *Black Lake*, 538 S.W.2d at 89.

Here, the court of appeals determined that the contract between Jones and TxDOT is analogous to the contracts in *Black Lake*. But this disregards two important factors that make this case not like *Black Lake* and most comparable to those cases *Black Lake* declined to follow. *See Black Lake*, 538 S.W.2d at 88 (distinguishing *Martin Bros.*, 160 S.W.2d at 60; *Austin Bridge, Co.*, 152 S.W.2d at 1091; *McKenzie*, 150 S.W.2d at 989).

First, the contract between TxDOT and Jones made the BOP's decision about terminating a DBE binding on all the parties, including TxDOT. Unlike the contract that gave Black Lake a right to overrule its inspectors' decisions about performance, no provision in the contract here allows TxDOT to overrule the BOP's decision. *Cf. Black Lake*, 538 S.W.2d at 88.

Second, contrary to what the court of appeals' analysis suggests, the Court's decision in *Black Lake* to apply a reasonableness standard did not turn on Black Lake's own inspectors having the authority to determine if performance was satisfactory. *See* 24 S.W.3d at 893 ("Because the BOP is a subdivision within [TxDOT], we believe that this satisfaction clause was effectively subject to the determination of a party; accordingly the applicable standard is the objective reasonableness test."). As dis-

cussed above, our holding in *Black Lake* turned on Black Lake itself having the right to overrule its inspectors' decisions. *See Black Lake*, 538 S.W.2d at 88 ("Black Lake's satisfaction was the conclusive test of whether the work was properly performed. When the inspectors ordered [the contractors] to perform extra work, the order was effective only because Black Lake let it stand."). Accordingly, though the BOP is a TxDOT subdivision, this is not the critical factor when determining what review standard applies.

Indeed, in those cases in which the courts applied a partiality, fraud, or gross error standard to review the engineer's decision under the satisfaction clause, the engineer was an employee of a party to the contract. *See McKenzie*, 150 S.W.2d at 996; *Teague*, 152 S.W.2d at 1093; *Martin Bros.*, 160 S.W.2d at 61; *Clark*, 695 S.W.2d at 675; *Austin Bridge Co.*, 427 S.W.2d at 937. Yet, the courts still applied the partiality, fraud, or gross error standard to review the engineers' decisions. As this Court explained in *Black Lake*, "[i]n deciding those cases we refrained from substituting our judgment for that of the architect or engineer, and we held that the decision of the architect or engineer is final and conclusive in the absence of fraud, misconduct, or gross mistake." *Black Lake*, 538 S.W.2d at 88.

Here, we likewise should refrain from substituting our judgment for that of the BOP. The record shows that the BOP is a TxDOT subdivision in Austin with the sole purpose of administering the DBE and Historically Under–Utilized Business Programs. Further, the record establishes that federal regulations require that the contractor provide documents to, and receive approval from, the BOP before terminating a DBE. Moreover, the federal government reviews the BOP's records to ensure it properly follows procedures for terminating a DBE. And, as the record shows, it is the federal regulations about DBEs with which TxDOT had to comply to receive federal funding for the project. *See* 49 C.F.R. § 23 (1993). Consequently, *Black Lake's* concern that an objective "reasonableness" review standard was necessary to prevent the contract in that case from being illusory is not raised here. *See Black Lake*, 538 S.W.2d at 88. The BOP's temptation to refuse a request to terminate a DBE on a "whim" or "caprice" is externally checked by federal oversight. *See Black Lake*, 538 S.W.2d at 88. Accordingly, the ALJ correctly applied the partiality, fraud, or gross error standard to review the BOP's decision denying Jones's request to terminate its DBE.

Finally, we note that, even if the court of appeals were correct in requiring review under the reasonableness standard, the ALJ expressly concluded in its final order the BOP's decision was "reasonable." Jones has not challenged the sufficiency of the evidence that the ALJ found supporting that conclusion.

## III. SOVEREIGN IMMUNITY

In addition to seeking judicial review of the agency decision, Jones brought two original causes of action in the trial court: a common-law breach of contract claim and a declaratory judgment action. Both claims are premised on the same contract dispute that was the subject of the suit for judicial review. TxDOT claims that the trial court lacked jurisdiction to decide the original claims, because Jones's administrative action is the exclusive remedy available on the contract claim.

In determining if the trial court could resolve the original claims, the court of appeals stated that, had Jones sued after the 1997 legislative session, Jones would not have been able to assert the contract and declaratory judgment actions in addi-

tion to obtaining the agency decision. The court of appeals relied on a 1997 amendment to the Transportation Code that establishes the administrative procedure for resolving contract disputes with TxDOT. 24 S.W.3d at 900. The court recognized that the Legislature provided that, notwithstanding any other law, the procedures proscribed by the Transportation Code "shall constitute the exclusive remedy at law" for resolving a claim that section governs. 24 S.W.3d at 900 (citing Act of June 1, 1997, 75th Leg., R.S., ch. 1171, § 1.36, 1997 Tex. Gen. Laws 4427, 4443 (codified at TEX. TRANSP. CODE § 201.112, cmt.)). But the court of appeals concluded that it was not clear whether this exclusive remedy rule applied when Jones's action arose. 24 S.W.3d at 900. Consequently, the court of appeals focused on whether Jones pled any facts demonstrating that TxDOT waived its sovereign immunity from suit. After concluding that Jones had not done so, the court of appeals remanded the breach of contract and declaratory judgment claims to the trial court to give Jones an opportunity to replead any facts demonstrating whether TxDOT waived its sovereign immunity from suit. 24 S.W.3d at 901.

### A. APPLICABLE LAW

■ ■ Sovereign immunity protects the State from lawsuits for money damages unless the Legislature expressly consents to the suit. *General Servs. Comm'n v. Little–Tex Insulation Co.,* 39 S.W.3d 591, 593 (Tex.2001). Generally, a party seeking redress for breach of contract can establish legislative consent to sue by bringing suit under a special statute or obtaining a legislative resolution. *See Little–Tex,* 39 S.W.3d at 596; TEX. CIV. PRAC. & REM.CODE § 107.001. Further, when a statute expressly provides for an administrative procedure to resolve certain types of contract claims against the State, a party must

avail itself of that process before seeking the Legislature's consent to sue under the Civil Practice and Remedies Code. *Little–Tex,* 39 S.W.3d at 597.

In 1997, the Legislature amended the Transportation Code to establish an administrative procedure through which parties may resolve contract disputes with TxDOT. *See* Act of June 1, 1997, 75th Leg., R.S., ch. 1171, § 1.36(a), 1997 Tex. Gen. Laws, 4427, 4443 (codified at TEX. TRANSP. CODE § 201.112). The Legislature's comment to this amendment explains that the Transportation Code's statutory procedure is the exclusive remedy for determining contract disputes between TxDOT and private parties. *See* TEX. TRANSP. CODE § 201.112, cmt. This exclusive remedy rule applies to any claim pending before TxDOT on the amendment's effective date, September 1, 1997. *See* TEX. TRANSP.CODE § 201.112, cmt. The Legislature defined "pending" to mean the claim has been filed with TxDOT but the claimant has not yet sought judicial review. *See* TEX. TRANSP. CODE § 201.112, cmt.

### B. ANALYSIS

■ ■ We conclude the court of appeals erred in remanding Jones's common-law breach of contract and declaratory judgment claims to the trial court for repleading. This case is analogous to *Little–Tex Insulation Co.,* in which we held that a party must participate in the administrative process the Legislature expressly provided for certain breach of contract claims as a prerequisite to seeking the Legislature's consent to sue under the Civil Practice and Remedies Code. *See Little–Tex,* 39 S.W.3d at 597. Here, the Legislature has expressly determined that the Transportation Code provides the exclusive remedy for contract claims against TxDOT. *See* TEX. TRANSP. CODE § 201.112, cmt. This exclusive remedy rule applies to

Jones's dispute. Jones filed its administrative claim with TxDOT on December 30, 1996, the ALJ issued her final order that TxDOT adopted in December 1998, and Jones sought substantial evidence judicial review on April 1, 1999. Accordingly, the exclusive remedy provision applies, because Jones filed its claim with TxDOT but had not yet sought judicial review on the amendment's effective date. *See* TEX. TRANSP. CODE § 201.112, cmts. The trial court thus lacks jurisdiction over Jones's common-law breach of contract and declaratory judgment claims, no matter how Jones pleads them. Therefore, we hold that the court of appeals erred in remanding those claims to the trial court for re-pleading.

## IV. CONCLUSION

The trial court's jurisdiction in this case was limited to a substantial evidence review of TxDOT's final order. *See* TEX. TRANSP. CODE § 201.112(d); TEX. GOV'T CODE § 2001.171. Accordingly, the trial court could only have affirmed the ALJ's decision, or reversed and remanded it if the trial court determined that the ALJ's decision was, among other specific statutory considerations, affected by an error of law. *See* TEX. GOV'T CODE § 2001.174. Consequently, the trial court erred by awarding Jones additional damages, interest, and attorney's fees. In rendering its judgment, the trial court either exceeded its review power under the substantial evidence rule, or it entertained Jones's original claims over which it had no jurisdiction because the administrative procedure provides the exclusive remedy. *See* TEX. TRANSP. CODE § 201.112, cmt; TEX. GOV'T CODE § 2001.174. As we have discussed, the court of appeals failed to identify the trial court's errors.

Because we conclude that the ALJ reviewed the BOP's decision under the correct standard, we reverse the court of appeals' judgment insofar as it remands that issue to the trial court with instructions to remand to the ALJ to review the BOP's decision under a different standard. Furthermore, because we conclude that the Transportation Code provides the exclusive remedy for breach of contract claims against TxDOT, we also reverse the court of appeals' judgment remanding the common-law breach of contract and declaratory judgment claims to the trial court for Jones to replead waiver of sovereign immunity. Accordingly, we reverse the court of appeals' judgment in its entirety, dismiss Jones's common-law breach of contract and declaratory judgment claims against TxDOT for lack of jurisdiction, and remand the remaining claim to the trial court for proceedings consistent with this opinion.

Justice ENOCH filed a concurring and dissenting opinion.

Justice ENOCH filed an opinion concurring in part and dissenting in part.

I do not take issue with the standard that the Court concludes the Administrative Law Judge should apply to this claim. Jones initiated the administrative proceedings under the Transportation Code, and I agree with the Court that this case need not be remanded for review under a different standard. But I disagree with the Court's holding that the Transportation Code provides the exclusive remedy for breach of contract claims against the Texas Department of Transportation. The statutory provision allowing for an administrative remedy in this case [1] is substantially similar to the provisions at issue in *General Services Commission v. Little–*

---

1. *See* TEX. TRANSP. CODE § 201.112.

*Tex Insulation Co.*[2] Therefore, for the reasons expressed in my dissent in *Little–Tex,* I respectfully dissent from that part of the Court's judgment dismissing Jones' common-law breach of contract and declaratory judgment claims.

It is a fair question to ask why I continue dissenting from this Court's sovereign immunity jurisprudence concerning contracts when the Court so clearly decided this issue in *Federal Sign v. Texas Southern University*[3] and *Texas Natural Resource Conservation Commission v. IT–Davy,* 74 S.W.3d 849 (Tex.2002).[4] Simply, these cases were wrongly decided, the damage wreaked continues unabated, and the full cost remains untotalled.

The List continues to grow.[5] As to the Court's sovereign immunity holding, I respectfully dissent—again.

**2.** 39 S.W.3d 591 (Tex.2001).

**3.** 951 S.W.2d 401 (Tex.1997)

**4.** 74 S.W.3d 849 (Tex.2002).

**5.** *See Tex. Dep't of Transp. v. Jones Bros. Dirt & Paving Contractors, Inc.,* 92 S.W.3d 477 (Tex.2002); *Travis County v. Pelzel & Assocs.,* 77 S.W.3d 246 (Tex.2002); *TNRCC v. IT–Davy,* 74 S.W.3d 849 (Tex.2002); *Gen. Servs. Comm'n v. Little–Tex Insulation Co.,* 39 S.W.3d 591 (Tex.2001); *Tex. Dep't of Transp. v. Aer–Aerotron, Inc.,* 39 S.W.3d 220 (Tex. 2001); *Federal Sign v. Tex. S. Univ.,* 951 S.W.2d 401 (Tex.1997); *Tex. Dep't of Pub. Safety v. Int'l Capital Corp.,* 40 S.W.3d 687 (Tex.App.-Austin 2001, no pet.); *Denver City Ind. Sch. Dist. v. Moses,* 51 S.W.3d 386 (Tex. App.-Amarillo 2001, no pet.); *Gendreau v. Medical Arts Hosp.,* 54 S.W.3d 877 (Tex.App.-Eastland 2001, pet. filed); *City of Houston v. Northwood Mun. Util. Dist. No. 1,* 73 S.W.3d 304 (Tex.App.-Houston [1st Dist.] 2001, no pet.); *Tex. Dept. of Pub. Safety v. Rivera,* No. 13–01–00446–CV, 2001 Tex.App. LEXIS 7681 (Corpus Christi Nov. 15, 2001, no pet.) (not designated for publication); *Landry's Crab Shack v. Bd. of Regents,* No. 03–00–00690–CV, 2001 WL 1240832, 2001 Tex.App. LEXIS 6948 (Austin Oct. 18, 2001, no pet.) (not designated for publication); *Ondemir v. Bexar County Clerk,* No. 04–00–00497–CV, 2001 WL 1136074, 2001 Tex.App. LEXIS 6488 (San Antonio Sept. 26, 2001, pet. denied) (not designated for publication); *O'Dell v. Perry,* No. 03–00–00603–CV, 2001 WL 726387, 2001 Tex.App. LEXIS 4367 (Austin June 29, 2001, no pet.) (not designated for publication); *State DOT v. Ramirez,* 72 S.W.3d 376 (Austin 2001, pet. filed) (not designated for publication); *Tex. A & M Univ. Sys. v. AFEX Corp.,* No. 03–00–00222–CV, 2001 WL 193881, 2001 Tex.App. LEXIS 1266 (Austin Mar. 1, 2001, no pet.) (not designated for publication).