**Reversed and Rendered, March 9, 2023 Memorandum Opinion and Judgment Withdrawn, and Memorandum Opinion filed May 8, 2023.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-21-00322-CV

---

### THE CITY OF HOUSTON, Appellant

### V.

### JAMES CONSTRUCTION GROUP, LLC, Appellee

---

**On Appeal from the 151st District Court
Harris County, Texas
Trial Court Cause No. 2019-19256**

---

### MEMORANDUM OPINION

In two issues, appellant, City of Houston, challenges the trial court's interlocutory order which denied both its motion for summary judgment and its plea to the jurisdiction. We dismiss its challenge to the summary-judgment denial for lack of appellate jurisdiction and otherwise reverse and dismiss the case for lack of subject-matter jurisdiction. We withdraw our previously issued memorandum opinion and replace it with this opinion.

# I. FACTUAL AND PROCEDURAL BACKGROUND

The City of Houston's Bush Intercontinental Airport needed extensive repairs of some of the taxiways. In 2016, the City of Houston ("Houston" or "the City") signed three Contracts (the "Contracts") with James Construction Group, LLC ("JCG") to perform the work for a total of $64,445,036.30.

| Project | PN460C | PN797 | PN675 |
|---|---|---|---|
| Contract # | 4600014415 | 4600014362 | 4600014266 |
| Project Description | Airfield Pavement Repairs | Taxiway RA Emergency Pavement Repairs | Reconstruction of Taxiway NA |
| Contract Price | $7,651,135.88 | $776,013.00 | $56,017,887.42 |

The projects suffered a variety of setbacks. According to JCG, while some of the project-altering events such as Hurricane Harvey were unanticipated, others were directly attributable to the City's gross mismanagement. From JCG's perspective, the City's acceleration determinations, the City's misapplication of the inspection criteria for cement-treated base, and the City's replacement of its project management team all hindered the project.

From the City's perspective, after the project was underway it became evident that JCG's workers did not have experience paving airport taxiways. According to the City, JCG used inadequate and, in some cases, the wrong paving materials, mixed the materials improperly, failed to abide by proper curing times and procedures for the materials, and began to skip contractually mandated quality control measures.

In light of the delays, key provisions found in the General Conditions of their contracts were set in motion, including provisions describing procedures for JCG to submit potential change orders, for the City to terminate the contract for

convenience, and for JCG to make a claim following the City's termination notice. One unique feature in the General Conditions, bearing significant implications to the aforementioned procedures, was that despite the City Engineer's role as an authorized representative of the City, the parties agreed the City Engineer would also serve a central role in making final decisions with respect to many of these procedures.[1]

*The potential change order and early termination*

On March 9, 2018, JCG submitted potential change order 003 ("PCO 003"). PCO 003 was related to the City's misapplication of the criteria for cement treated base, creation of gross productivity losses, and improper imposition of acceleration costs. JCG requested a contractual adjustment of $2,207,512 for PCO 003, which reflected the amount owed as compensation for the increased cost to perform the work as a direct result of City-caused delays or acceleration.

Subsequently, the City Engineer formally notified JCG that the City was terminating the Contracts solely for the City's convenience under article 14.2 of the General Conditions to the Contracts. The City Engineer issued two letters on April 10, 2018, for Projects PN460C and PN797, becoming effective a week later, and effectuating an October 17, 2018 notice-of-termination-claim deadline for those projects. The City Engineer also issued a letter on May 4, 2018, becoming effective a week later, for Project PN675, and effectuating a November 11, 2018, notice-of-termination-claim deadline for that project.

Following the City's termination notice, JCG submitted a written demand to the City seeking payment for services rendered, as allowed by article 14.2.3 of the

---

[1] The City repetitiously alleges the parties agreed the City Engineer would perform the role of an "arbitrator" in resolving claims and disputes, but the Contract contains no such reference to an arbitrator or arbitration between the Contractor and the City.

3

General Conditions to the Contracts. JCG's termination-for-convenience claim ("PCO 007") was for payment of specific sums for work performed, as well as its not inconsiderable costs to demobilize and remove materials and equipment from the jobsite. The Contracts provide that upon termination for convenience by the City, JCG is entitled to the "Contract Price for all work performed in accordance with the Contract up to date of termination determined in the manner provided in Article 9[.]" Additionally, JCG is entitled to "[r]easonable termination expenses, including costs for settling and paying Subcontractor and Supplier claims arising out of termination of the Work, reasonable cost of preservation and protection of the City's property after termination, if required, and the cost of Claim preparation." By July 2018, JCG detailed these costs in PCO 007 and in subsequent amendments required by the City. JCG contends that it repeatedly provided substantial documentation to the City to support these claims.

With respect to the contract adjustment claims for project PN675 (PCO 003), the City Engineer issued an award and the City paid JCG $1,048,374.23. The City Engineer also issued awards to JCG on its termination claims (for Project PN460C and PN797) on November 21, 2018, and (for Project PN675) on December 13, 2018. The City ultimately paid JCG $1,032,991.40 for the three Termination claims.

In the months leading up to the City Engineer's determination, JCG attempted to work with the City Engineer to supplement its supporting documentation. In that time the following events transpired:

> On October 15, 2018, the City engineer wrote JCG a letter stating that "on November 12, 2018, the City Engineer will promptly review and make a final decision regarding all claims submitted by [JCG] within six months of [the City's] notice of termination for convenience."
>
> On October 18, 2018, JCG responded that it was "anticipating

4

resubmittal of the Termination for Convenience Claim Proposal in the early part of November, 2018," and that the claim "will be resubmitted prior to the expiration of the six month submittal period."

In a letter dated November 9, 2018, two days before the expiration of six months, JCG stated that "it has become necessary to involve a consulting firm and request additional time to allow for an accurate and reasonable claim to be assembled."

The City engineer received this letter by email on November 11, 2018, the last day of the six-month termination period.

On November 26, 2018, the City Engineer responded to JCG's letter by restating the terms of the Contracts, namely that "November 12, 2018 was the deadline for [JCG] to submit its claim." The City Engineer further added that no extension was granted and that the amount due to JCG would be determined "based on the current claim documents, pursuant to Sections 14.2.3 ad 14.2.4 of the Contract."

JCG protested that the City's "final determination" of the termination claims was "inconsistent with the terms of the contract."

JCG brought this lawsuit, seeking an additional $13,416,633.00. The City first moved for summary judgment on res judicata grounds, to which JCG filed a response. In its reply to that response, the City filed its plea to the jurisdiction asserting that JCG had failed to establish the City's waiver of immunity. The trial court denied both motions.

## II. SUMMARY JUDGMENT

The City's lead issue challenges the trial court's denial of its motion for summary judgment. We lack jurisdiction to hear this challenge.

The City's summary-judgment motion, exclusively based on its assertion of res judicata following the City Engineer's decision, raised no ground based on immunity, and cannot reasonably be construed as a plea to the jurisdiction or any other jurisdictional challenge. See Tex. Civ. Prac. & Rem. Code § 51.014(a)(8)(providing jurisdiction over an interlocutory appeal from the denial of

5

a *plea to the jurisdiction* filed by a governmental entity). The Court's order denying summary judgment is neither a final judgment nor an order that falls within the scope of an interlocutory appeal statute. We lack jurisdiction to review the denial of a summary judgment. *See Clark v. Clark*, 638 S.W.3d 829, 838 (Tex. App.—Houston [14th Dist.] 2021, no pet.); *Alexander Dubose Jefferson & Townsend LLP v. Chevron Phillips Chem. Co., L.P.*, 540 S.W.3d 577, 587 (Tex. 2018).

### III. PLEA TO JURISDICTION

In its second issue, the City argues that the trial court erred in denying its plea to the jurisdiction.

### *Standard of Review*

A plea to the jurisdiction questioning the trial court's jurisdiction raises a question of law that we review *de novo. City of Houston v. Collins*, 515 S.W.3d 467, 471 (Tex. App.—Houston [14th Dist.] 2017, no pet.). The standard of review for a plea to the jurisdiction "generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Id. citing Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004).

The jurisdictional question in this case relates to governmental immunity; governmental immunity from suit defeats a court's subject matter jurisdiction. *Dallas Area Rapid Transit v. Whitley,* 104 S.W.3d 540, 542 (Tex. 2003). We review de novo whether the City's governmental immunity deprives the trial court of jurisdiction.

Appellate review of subject-matter jurisdiction generally begins with review of the pleadings, and we will uphold the trial court's ruling if it would be proper based on our independent review of JCG's petition. *See City of Houston v. Rhule*,

6

417 S.W.3d 440, 442 (Tex. 2013) (explaining that all courts bear the affirmative obligation to review issues of subject matter jurisdiction even if not raised by the parties).

A plea to the jurisdiction "may challenge the pleadings, the existence of jurisdictional facts, or both." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). If a plea "challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Miranda*, 133 S.W.3d at 226. In determining whether the plaintiff has met that burden, "we liberally construe the pleadings, taking all factual assertions as true and looking to [the plaintiff's] intent." *City of Ingleside v. City of Corpus Christi*, 469 S.W.3d 589, 590 (Tex. 2015).

But when a plea to the jurisdiction challenges the existence of jurisdictional facts, we look beyond the pleadings and consider evidence submitted by the parties "when necessary to resolve the jurisdictional issues raised," even if the evidence implicates both the court's jurisdiction and the merits of a claim. *Miranda*, 133 S.W.3d at 227. For a plea that challenges the existence of jurisdictional facts, our standard of review generally mirrors that of a traditional summary judgment: a plaintiff must raise a genuine issue of material fact to overcome the challenge to the trial court's jurisdiction. *Id.* at 221, 228. In determining whether the plaintiff has met that burden, "we take as true all evidence favorable to" the plaintiff and "indulge every reasonable inference and resolve any doubts in the [plaintiff's] favor." *Id.* at 228. If the evidence and allegations create a fact question regarding jurisdiction, then a court cannot grant a plea to the jurisdiction, and the factfinder must resolve the fact issue. *Id.* at 227–28. But "if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue," a court rules "on the plea to the jurisdiction as a matter of law." *Id.* at 228.

7

*Sovereign Immunity Analysis*

Under the common law doctrine of sovereign immunity, the state is immune from suit, which means that it cannot be sued without its consent. *See City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011). When performing governmental functions, political subdivisions derive governmental immunity from the state's sovereign immunity. *See City of Galveston v. State,* 217 S.W.3d 466, 469 (Tex. 2007). The City, a municipality, is a local governmental entity and thus cannot be sued absent a waiver of its governmental immunity. *City of Houston v. Williams*, 353 S.W.3d at 134.

One such waiver can be found in the Local Government Contract Claims Act, codified in Section 271.152 of the Texas Local Government Code, which provides that a local governmental entity that "enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of the subchapter." The subchapter limits the damages for which a party can sue the government, but allows for "the balance due and owed by the local governmental entity under the contract" and "the amount owed for change orders or additional work the contractor is directed to perform by a local governmental entity in connection with the contract." § 271.153.

For section 271.152's waiver of immunity to apply, three elements must be established: (1) the party against whom the waiver is asserted must be a "local governmental entity" as defined by section 271.151(3), (2) the entity must be authorized by statute or the Constitution to enter into contracts, and (3) the entity must in fact have entered into a contract that is "subject to this subchapter," as defined by section 271.151(2). Tex. Loc. Gov't Code §§ 271.151–.152; *City of Houston v. Williams*, 353 S.W.3d 128, 134–35 (Tex. 2011). A "contract subject to

8

this subchapter" is defined as "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity." Tex. Loc. Gov't Code § 271.151(2). The *Williams* court reduced this third requirement to five components, and explained:

> Section 271.151(2) effectively states five elements a contract must meet in order for it to be a contract subject to section 271.152's waiver of immunity: (1) the contract must be in writing, (2) state the essential terms of the agreement, (3) provide for goods or services, (4) to the local governmental entity, and (5) be executed on behalf of the local governmental entity.

*City of Houston v. Williams*, 353 S.W.3d 128, 135 (Tex. 2011); Tex. Loc. Gov't Code §271.151(2). The City has not disputed that any of the above statutory elements or components precluded application of the waiver. Upon review of the record, JCG's pleadings provide allegations that sufficiently satisfy these elements. The City does not challenge JCG's allegation that Houston is a municipality which constitutes a "local government entity" under the Local Government Contract Claims Act or JCG's allegation that the City and its various named agents were authorized to enter any of the contracts.[2]   This is not a case that presents an area of dispute with respect to any of the above elements or components.

Instead, in its second issue, the City has argued only that JCG failed to assert a valid and viable breach of contract claim; namely, that in light of the contracts' provisions calling for resolution by the City Engineer, which limit the scope of review, JCG has failed to plead and prove its claim. We have previously observed that "[t]he City's governmental immunity is waived only to the extent the [plaintiff] has pleaded a *viable or valid constitutional claim.*" *Houston*

---

[2] We take judicial notice that for purposes of this statute these first two elements were satisfied for the City in *City of Houston v. Williams*, 353 S.W.3d at 135.

9

*Firefighters' Relief & Ret. Fund v. City of Houston*, 579 S.W.3d 792, 800 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) (emphasis added).

The unique nature of the contracts in this case drive the relevant standard. Each of JCG's breach of contract claims, both its contractual adjustment claims and its termination claims, are based the same facts as the Claims directed to the City Engineer for final determination.

Undisputed are the facts that the parties contractually designated the City Engineer to resolve claims, that JCG submitted claims for resolution by the City Engineer, and that the City Engineer issued determinations.

A contract may require performance by one party to be subject to the satisfaction of the other party, or a designated third party such as an architect or engineer. *Tribble & Stephens Co. v. RGM Constructors, L.P.*, 154 S.W.3d 639, 652–53 (Tex. App.—Houston [14th Dist.] 2004, pet. denied), opinion supplemented on overruling of reh'g (Feb. 10, 2005). In regard to such provisions, the Texas Supreme Court has held that "[w]hen parties to a building contract agree to submit questions which may arise thereunder to the decision of the engineer, his decision is final and conclusive; unless in making it he is guilty of fraud, misconduct, or such gross mistake as would imply bad faith or failure to exercise an honest judgment." *Tex. Dep't of Transp. v. Jones Bros. Dirt & Paving Contractors, Inc.*, 92 S.W.3d 477, 481–82 (Tex. 2002) *citing McKenzie*, 150 S.W.2d at 996. Because the contract provisions at issue in this case called for the City Engineer to resolve claims – provisions the parties clearly implemented– we consider the facts under the applicable standard.

The claims asserted in this case follow from the City Engineer's decision-making with respect to claims JCG referred to him under the terms of the contracts. Thus, in the context of each of the contracts at issue, in evaluating the pleadings

10

and evidence for the purpose of the jurisdictional challenge, we consider whether JCG alleged and provided a fact issue showing the City Engineer was guilty of fraud, misconduct, or such gross mistake as would imply bad faith or failure to exercise an honest judgment.

### *Contractual Adjustment Claims*

The record before us shows that JCG submitted a contractual adjustment of $2,207,512, reflecting the amount owed as compensation for the increased cost to perform the work as a direct result of owner-caused delays or acceleration, as well as the amount owed for change orders or additional work JGG was directed to perform by the City in connection with the Contracts. These claims were submitted prior to the City's termination. The provisions within Article 4 of the General Conditions operate to facilitate the submission and negotiation of such claims, but ultimately authorize the City Engineer to review such claims for final resolution, and provides that the "City Engineer's decision is final and binding." The City provided an affidavit from the City Engineer in which he stated that he made a final determination with respect to these claims on August 2, 2018. The record also includes the City Engineer's letter memorializing the status of prior negotiations: The City Engineer reported that the City had received JCG's third revision of PCO 003 on June 18, 2018, that a meeting was held to discuss components of the claim, that the City had made an offer rejecting part of the claim, accepting other parts of the claim and offered to pay JCG $1,048,374.23 for PCO 003. The report details the reasoning for the differences of JCG's claim and the City's offer.

On December 13, the City Engineer sent a letter entitled "Closeout Letter" reporting that it was closing out the contract and notifying that the City of Houston would process payment on various items including the amount offered for PCO

11

003. JCG did not allege or present evidence to the trial court showing how the City Engineer acted with "partiality, fraud, misconduct, and/or gross error" with respect to the City Engineer's resolution of the contractual adjustment.

In the absence of a valid and viable claim following the City Engineer's determination, such as a claim for gross misconduct or bad faith, the City's governmental immunity is not waived as to JCG's claims based on misconduct by the City Engineer because JCG has not pleaded or proven a viable or valid claim based on gross misconduct or bad faith. See *Tex. Dep't of Transp. v. Jones Bros. Dirt & Paving Contractors, Inc.*, 92 S.W.3d 477, 481–82 (Tex. 2002). We thus sustain the City's second issue with respect to the contractual adjustment claims.

### Termination Claims

The record shows that JCG timely submitted notice of its termination claims for payment of specific sums for work performed on the three respective projects, as well as costs to demobilize and remove materials and/or equipment from the jobsite.

The central governing contractual provision relating to JCG's termination claim, was stated in Section 14.2.3 of the General Conditions:

> 14.2.3 After receipt of the Notice of Termination, Contractor shall submit to the City its termination Claim, in forms required by City Engineer. The Claim will be submitted to the City promptly, but no later than six months from the effective date of termination, unless one or more extensions are granted by City Engineer in writing. If Contractor fails to submit its termination Claim within the time allowed, in accordance with Paragraph 14.2.4, City Engineer will determine, on the basis of available information, the amount, if any, due to Contractor because of termination, and City Engineer's determination is final and binding on the Parties. The City will then pay to Contractor the amount so determined.

> Though the record shows that JCG submitted a transmittal letter on July 6,

12

2018 containing roughly 385 pages in support of its termination claims, JCG argues that it was entitled to have additional documentation considered that was submitted on December 14, 2018 that it contends the City Engineer arbitrarily refused to consider.

In support of its argument that the City Engineer committed a gross mistake or was guilty of misconduct by not considering JCG's December 14 submission of substantiating documents, JCG relies on its reading of 14.2.3 with the definition of the term "Claim" provided in the General Conditions which means a "[w]ritten demand or written assertion by one Party seeking adjustment of the Contract, payment of money, extension of time, or other relief under the Contract . . ." JCG insists that under 14.2.3, it was only required to file a written demand giving notice of the claim within six months; that it was not required to provide substantiating material within this timeframe. JCG contends that City Engineer was contractually obligated to "determine, on the basis of information available to City Engineer, the amount due, if any, to Contractor for the termination [of convenience]" and failed to do so by not considering the materials submitted on December 14, 2018. Without significant explanation JCG argues in the alternative, "at worst, the Contracts would be ambiguous, thus constituting a material fact dispute regarding the City's proposed jurisdictional issue." Because the parties dispute whether the contract permitted JCG to submit supporting materials more than six months following the City's notice of Termination, we consider whether the contract so provided or whether it is ambiguous.

When interpreting a contract, our primary concern is to ascertain and give effect to the written expression of the parties' intent. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.,* 341 S.W.3d 323, 333 (Tex. 2011) (citing *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 229 (Tex. 2003)). By this approach,

we "strive to honor the parties' agreement and not remake their contract by reading additional provisions into it." *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London,* 327 S.W.3d 118, 126 (Tex. 2010). "[I]t is objective, not subjective, intent that controls." *Burwell,* 189 S.W.3d at 740. We give words and phrases their ordinary and generally accepted meaning, reading them in context and in light of the rules of grammar and common usage. *See Gilbert Tex. Constr.,* 327 S.W.3d at 126; *Dynegy Midstream Servs., Ltd. P'ship. v. Apache Corp.,* 294 S.W.3d 164, 168 (Tex. 2009). We examine the writing as a whole to harmonize and give effect to all of the contract's provisions so that none is rendered meaningless or surplusage. *J.M. Davidson,* 128 S.W.3d at 229; *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 134 (Tex. 1994) ("long-established rule" is that "[n]o one phrase, sentence, or section [of a contract] should be isolated from its setting and considered apart from the other provisions"); *Coker v. Coker,* 650 S.W.2d 391, 393–94 (Tex. 1983). We also bear in mind the particular business activity to be served, and when possible and proper, we avoid a construction that is unreasonable, inequitable, and oppressive. *Frost Nat'l. Bank v. L & F Distribs., Ltd.,* 165 S.W.3d 310, 312 (Tex. 2005) (per curiam).

In reviewing the plain and ordinary meaning of the contract, we find the deadline to submit substantiated termination claims is unambiguous. The provision plainly states that the deadline to submit a termination claim is "no later than six months from the effective date of the termination" unless the City Engineer grants an extension. In this context, the word "Claim" means more than as independently defined in section 1.1.9. "Claim" is further characterized under section 14.2.3 by the modifying phrase "in forms required by the City Engineer". The phrase can only reasonably be interpreted as defining 14.2.3 Claims (termination claims) as types of claims submitted in a particular manner;

14

essentially, in a manner that informs the City Engineer as he or she requests, whether it be by specifically filling-in entries in a form provided by the city, or more generally providing responsive substantive materials in the manner, or form, prescribed by the City Engineer.  Though the word "form" can mean many things,[3] in context, the phrase denotes *forms* to be sets of required information, descriptions, or explanations called for by the City Engineer. Thus, a Claim, when made *in forms requested*, is substantiated.   Moreover, the broad word "form", as coupled with the phrase "required by the City Engineer," leads to the reasonable expectation that completing submission of a termination Claim under 14.2.3 would require communication with the City Engineer as to the proper form and could be a process, or a dialogue, rather than a single effort.

The contract plainly states that "[i]f Contractor fails to submit its termination Claim within the time allowed, in accordance with Paragraph 14.2.4, City Engineer will determine, *on the basis of available information*, the amount, if any, due to Contractor because of termination, and City Engineer's determination is final and binding on the Parties."   The City Engineer was authorized to make a final determination after six months "on the basis of available information."   Indeed, that's what happened here; the City Engineer made the final determination based on available information prior to December 14, 2018 when JCG submitted additional claim-supporting documentation.

Finally, the extension clause, which provides an exception to the six-month

---

[3] Relevant to the context "form" includes such meanings as "1a : the shape and structure of something as distinguished from its material"; "4 : a printed or typed document with blank spaces for insertion of required or requested information"; "5c manner or style of performing or accomplishing according to recognized standards of technique"; "10a(1) : orderly method of arrangement (as in the presentation of ideas) : manner of coordinating elements (as of an artistic production or course of reasoning)" Merriam-Webster Online Dictionary, available at http://merriam-webster.com/dictionary/forms (last visited January 18, 2023).

deadline "unless one or more extensions are granted by City Engineer in writing", authorizes only the City Engineer the power to extend the deadline and specifically in writing. The provision stands without further modification, and can only reasonably be construed as a matter of the City Engineer's discretion.

The contract cannot reasonably be construed as JCG suggests, to provide for the unlimited submission of substantiating documents beyond the six-month claim period without having obtained an extension granted by the City Engineer. Importantly, the contract does not refer to an additional deadline for substantiating materials, but instead emphasizes expedience and finality.

Under the plain and ordinary meaning of the contract we find that the phrase "Claims, in forms required by the City," means *substantiated* claims, required to be submitted within six months from the termination notice or later with an extension granted at the City Engineers discretion. Despite JCG's contentions, this construction of section 14.2.3 is consistent with JCG's own reflections on the contract's terms in October 2018, when it acknowledged the six-month deadline to submit its claims and requested additional time, a request that was denied.

Under this construction, we cannot find support for the trial court's implicit conclusion that JCG provided any allegations or evidence that the City Engineer was guilty of fraud, misconduct, or such gross mistake as would imply bad faith or failure to exercise an honest judgment. The record shows that the City Engineer acted within his discretion in refusing to grant the extension requested in November, in making a determination based on the termination claims as substantiated within the six-month deadlines, and in making a final determination on December 13, 2018 without considering or reconsidering the claims after JCG's belated submission on December 14, 2018.

The City's governmental immunity is not waived as to JCG's termination

16

claims based on misconduct by the City Engineer because JCG has not pleaded or proven a viable or valid claim based on gross misconduct or bad faith. *See Houston Firefighters' Relief & Ret. Fund v. City of Houston*, 579 S.W.3d 792, 808 (Tex. App.—Houston [14th Dist.] 2019, pet. denied). We thus sustain the City's second issue as it pertains to JCG's termination claims.

### III. CONCLUSION

The City's appeal of the trial court's interlocutory summary judgment, unrelated to its assertion of immunity, lacks appellate jurisdiction. As discussed above, the City's governmental immunity is not waived as to JCG's breach of contract claims. We reverse and render dismissal for lack of jurisdiction with respect to the trial court's order denying the plea to the jurisdiction, and we otherwise dismiss the remainder of City's appeal for lack of appellate jurisdiction.


/s/     Randy Wilson
        Justice


Panel consists of Justices Wise, Poissant, and Wilson